*BRUCE  v.  BEALL.        .

(*Jackson.*    September   30,   1897.)

1. EVIDENCE.    *Of extent of injury.*

Evidence that plaintiff, in an action for personal injuries, could read and was studying medicine and going to school before the injury, but could not read after its occurrence, is admissible, although not specially pleaded, to show the seriousness of the injuries, where no effort to show any pecuniary loss therefrom is made.    (*Post, pp. 306, 307.*)

Cases cited and approved: Railroad *v.* Hicks, 5 Sneed, 427; 69 Miss., 299.

2. SAME.    *X-ray photograph of fracture admissible.*

An X-ray photograph, showing the overlapping bones of one of the legs of plaintiff, broken by an injury for which suit is brought, taken by a physician and surgeon familiar with fractures and with the process of taking such photographs, who testifies that it accurately represents the condition of the leg, is admissible in evidence.    (*Post, pp. 307, 308.*)

Cases cited and approved: 79 Pa. St., 340; 83 N. Y., 464; 52 Ala., 118; 45 N. Y., 213; 31 Wis., 512; 118 Mass., 421; 16 Gray, 161.

3. SAME.    *Weight of trial Judge's ruling that a witness is an expert.*

A determination by the trial Judge that a witness offered has the requisite qualifications for an expert, will not be disturbed on appeal, except in a case of clear abuse of discretion. (*Post, p. 309.*)

Case cited and approved: Powers *v.* McKenzie, 90 Tenn., 167.

4. SAME.    *Opinions of experts not admitted to invade province of jury.*

Expert evidence to the effect that it would not be prudent to keep the cable supporting an elevator running for more than six or seven years, where the elevator is used daily, is inadmissible in an action for personal injuries caused by the breaking of elevator cables which had been operated without change for eleven years.    (*Post, pp. 310–317.*)

Cases cited and approved: Lawrence *v.* Hudson, 12 Heis., 671; 139 Pa. St., 149; 11 Am. & Eng. R. R. Cases, 260; 36 Iowa, 462; 78

*The use of photographs in evidence, as shown by the numerous decisions on the subject, is the subject of a note to *Dederichs v. Salt Lake City R. Co.* (Utah), 35 L. R. A., 802.—REPORTER.

Bruce *v.* Beall.

Ill., 32; 121 Mass., 446; 11 S. E. Rep., 497; 33 Minn., 62; 42 N. W. Rep., 873 (S. C., 4 L. R. A., 673); 122 Mass., 251.

5. SAME.  *Insufficient objection to.*

Alleged error in the admission of evidence to which an objection was taken, but on which there was no ruling by the trial Judge, will not be considered on appeal where no motion to strike out the questions and answers was made. (*Post, pp. 310, 311.*)

6. CHARGE OF COURT.  *Erroneous as to master's duty to provide safe machinery for servant.*

Error in instructing the jury that the master owes to his servant or employe the duty to provide safe and suitable machinery where that is necessary, is not cured by announcing the proper rule in a later and disconnected part of the instructions. (*Post, pp. 317, 318.*)

7. SAME.  *Erroneous as to use of elevator cables.*

The mere fact that the owner of an elevator uses the cables supporting it beyond the time during which such cables can be safely used, does not render him liable for an injury to an employe caused by the breaking of the cables, unless he knows, or, by the exercise of reasonable care, could know, that the use of the cables for such length of time is dangerous. (*Post, pp. 318–320.*)

8. SAME.  *Same.*

An employer cannot continue to use machinery not obviously dangerous, without imputation of negligence, merely because it has been in daily use for years, and has uniformly been found adequate, safe, and convenient, as the fact that a machine has never given way raises no presumption that it never will. (*Post, pp. 320, 321.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County.  L. H. ESTES, J.

E. ELDRIDGE WRIGHT, J. R. FLIPPIN for Bruce.

PERCY & WATKINS for Beal.

Bruce *v.* Beall.

BEARD, J.    The defendant in error was an em-
ploye of the plaintiffs in error, and while engaged
in the performance of a duty to his employers was
frightfully injured, by the fall of a freight and
passenger elevator in the storehouse of plaintiffs in
error.    At the time of the accident, the defendant
in error was on the elevator, and the fall was oc-
casioned by the sudden breaking of the two wire
cables by which it was suspended.    To recover dam-
ages for the injury thus sustained, this action was
brought.

In his declaration, the plaintiff alleged that the
elevator was "so carelessly and negligently con-
structed and maintained, that the cables suspending
it had been thirteen years in use, and were old and
rusted, and that the wooden guides attached were so
worn and rotten, and the safety appliance, intended
to prevent a fall, was so defective and out of re-
pair," that while the plaintiff was riding on it, and
discharging a duty in obedience to the orders of
his employers, the cables, together with the safety
catches and other appliances, broke, and the elevator
fell a distance of five stories to the basement floor
beneath, carrying plaintiff with it, and inflicting the
injuries complained of.

It was further alleged that these injuries resulted
from the flagrant negligence of the defendants in
the construction and maintenance of the elevator and
its appliances.    To this declaration, a number of
pleas were put in, among them being that of not

15 P—20

Bruce *v.* Beall.

guilty. On the trial of the case, there was a ver-
dict of $15,000 for the plaintiff, from a judgment
on which an appeal has been prosecuted to this
Court. Many errors are assigned on the action of
the trial Court; only a few of these, however, will
be noticed.

1. Beall, the plaintiff below, while being examined
as a witness in his own behalf, was permitted, over
the objection of the defendants below, to say that,
before the injury complained of, he "could read, and
was studying medicine, and was going to school, but
that since it occurred he could, not read." It is
now alleged that this was incompetent. However, it
was not averred in the declaration that this special
injury resulted from the negligence of the defendants
below. The rule is well settled that to recover for
special damages, they must be stated in the declara-
tion. 1 Sutherland on Damages, p. 763; 2 Greenleaf
on Evidence, p. 254 (14th Ed.); *Burson* v. *Cox*, 6 Bax.,
360. And if it appeared that this evidence had been
offered for the purpose of resting upon it an inde-
pendent claim for damages, it certainly would have
been incompetent. But it is clear that this was not
the purpose of the counsel of plaintiff below, but
that this evidence was offered with the view of
throwing light on one of the questions in contro-
versy, to wit, the extent of plaintiff's injuries, among
which, the declaration averred, was spinal concussion.
No effort was made to show any pecuniary loss on
account of the plaintiff's inability to study or to go

to school, and, in the absence of such effort or claim, it was competent for it to go to the jury as tending to prove the seriousness of the jnjuries complained of. *Mass. Mills Co.* v. *Smith et als.*, 69 Miss. Rep., 299; *Railroad* v. *Hicks*, 5 Sneed, 427.

2. In the progress of the trial, one Dr. Galtman was introduced as a witness, and he was permitted to submit to the jury an X-ray photograph, taken by him, showing the overlapping bones of one of plaintiff's legs, at the point where it was broken by this fall. This was objected to by the defendant's counsel. This picture was taken by the witness, who was a physician and surgeon, not only familiar with fractures, but with the new and interesting process by which this particular impression was secured. He testified that this photograph accurately represented the condition of the leg at the point of the fracture in question, and, as a fact, that by the aid of X-rays he was enabled to see the broken and overlapping bones with his own eyes, exactly as if stripped of the skin and tissues, they were uncovered to the sight. We might, if we so desired, rest our conclusion on the general character of the exception taken to this testimony, but we prefer to place it on the ground that, verified as was this picture, it was altogether competent for the purpose for which it was offered. New as this process is, experiments made by scientific men, as shown by this record, have demonstrated its power to reveal to the natural eye the entire structure of

the human body, and that its various parts can be photographed, as its exterior surface has been and now is.  And no sound reason was assigned at the bar why a civil Court should not avail itself of this invention, when it was apparent that it would serve to throw light on the matter in controversy. Maps and diagrams of the *locus in quo*, drawn by hand, are often used to aid a Judge or a jury to an intelligent conception of the matters to be determined, and no one would think of questioning the competency of the testimony of a witness who stated that he knew the map or diagram to be entirely accurate, and who then used it to illustrate or make plain his statement.  The pictorial representation of the condition of the broken leg of the plaintiff gave to the jury a much more intelligent idea of that particular injury than they would have obtained from any verbal description of it by a surgeon, even if he had used for the purpose the simplest terms of his art.  We have not had our attention called to any case bearing on this question save that of *Smith* v. *Grant*, tried in the First District Court of Colorado and reported in the *Chicago Legal News* of December, 1896; but photographs showing exterior surfaces have been held admissible in numerous cases. They have been held competent on the question of identity of persons (*Underzook* v. *Com.*, 79 Pa. St., 340; *Cowley* v. *People*, 83 N. Y., 464 (S. C., 38 A. R., 464); *Luke* v. *Calhoun Co.*, 52 Ala., 118; *Ruloff* v. *People*, 45 N. Y., 213); and to identify

Bruce v. Beall.

premises (*Church* v. *Milwaukee*, 31 Wis., 512; *Blair* v. *Pelham*, 118 Mass., 421); and in cases of handwriting (*Mayor* v. *Barnes*, 16 Gray (Mass.), 161.) It is not to be understood, however, that every photograph taken by the cathode or X-ray process would be admissible. Its competency, to be first determined by the trial Judge, depends upon the science, skill, experience, and intelligence of the party taking the picture and testifying with regard to it, and that, lacking these important qualifications, it should not be admitted. And again, that, even when properly admitted, it is not conclusive upon the triers of fact, but is to be weighed like other competent evidence.

3. The plaintiff below placed on the stand, as expert witnesses, one Garside and one Holroyd, and it is assigned for error upon the part of the trial Judge, first, that he permitted these parties to testify without having first qualified as experts. A sufficient answer to this particular objection would be "that the determination of the question whether a witness offered has the requisite qualifications for an expert rests largely in the discretion of the trial Judge, and when, upon a preliminary examination, he has ruled that he has properly qualified himself as such, except in a case of clear abuse of his discretion, his conclusion, in this respect, would not be disregarded by a revisory Court." Rogers on Expert Testimony, pp. 24, 25; *Powers* v. *McKenzie*, 6 Pick., 167. But, independent of this, an examination of

this record shows that these parties had a great many years' experience with machinery of various kinds, and especially with elevators and wire cables, and that their experience thoroughly qualified them as experts in this case. Second, the most serious objection, however, is that urged to the character of the testimony which the plaintiff below was permitted to educe from these experts for the consideration of the jury. It was undisputed that the defendants below had caused to be erected this elevator about eleven years before the accident occurred, and that the cable wires, which broke, and thus caused its precipitation, had been continuously in use during that period of time.

To each of these expert witnesses, plaintiff's counsel put a hypothetical case, embracing the fact that these cables had been in almost daily use, lifting and lowering heavy weights for a number of years, and they were asked the effect of such use upon them, and to the case so put each answered that the strain and friction would produce crystallization of the metal in the cables, which would make them brittle and greatly increase their liability to break; and each one of these witnesses fixed the life of a cable, under the facts in the hypothetical case, at from five to seven years. After making these statements, Garside was permitted to say, in answer to certain questions propounded to him by plaintiff's counsel, that a continuous use of cables, under the conditions embraced in the hypothetical

statement was very dangerous, and that at the end of five years' service, he would, if controlling them, cause them to be renewed. Objections were made to this testimony, but the trial Judge failed to make a ruling upon these objections, and the counsel omitted to move that the questions and answers be stricken from the record (2 Elliott's Gen. Pr., Sec. 585), and hence plaintiffs in error are in no condition to maintain their assignment of error upon the admission of this testimony of Garside.

It is otherwise, however, as to the witness, Holroyd. In his examination, the bill of exceptions shows as follows: "*Question by plaintiff's counsel.*— Mr. Holroyd, suppose an elevator used for freight and passengers, having two ¾-inch cables, to be used in a jobbing and retail store, hauling carriages . . . and heavy hardware, running all the way from two to six hours a day, and, under ordinary water pressure, should be able to carry up from 2,000 to 2,500 pounds at a load, what would you say would be the life of such a cable? *Answer.*— Well, six or seven years, I should judge. . . . *Ques.*—State whether or not it would be prudent to keep the cables running longer than that for that kind of work." At this point the defendants objected, on the ground that this was "not a proper subject of expert testimony, and also on the ground that the witness had not sufficiently qualified himself to speak as an expert." This latter objection was conceded by the trial Judge to be well taken, and

he thereupon took the witness in hand and examined him as to his qualifications to testify as an expert. Having become satisfied that he was qualified, he directed the examination to proceed. Whereupon, continuing, the plaintiff's counsel addressed to the witness this question: "Now go on, Mr. Holroyd, and state whether it is prudent for an elevator to be operated with cables longer than that (that is, six or seven years) doing this kind of work. *Ans.* —Well, no; I don't think it would be, for the reason that the iron, from constant daily use, crystallizes more or less, even if it don't show. The small particles in the wire twist, and you can take it off. I have tested it hundreds of times, I reckon, and you can break it just as you would glass; it becomes brittle." It is insisted that so much of this answer as, in reply to preceding questions, in effect tells the jury that it was not prudent to operate an elevator with wire cables, under the conditions described, longer than six or seven years, was highly improper, inasmuch as the witness was thus permitted to determine one of the main issues which the jury were sworn to try—that is, the question of negligence. For, it is properly argued, if it was imprudent to permit the cables in question to remain in use for a longer time than six or seven years, then the defendants in error were culpably negligent in keeping them continuously in service for eleven years. The vital importance of this testimony can be appreciated when it is stated that Holroyd had

had a long experience as the manager of elevators,
and in the meantime had devoted much time and
study to cables and in operating them.    Being one
of only three expert witnesses examined during the
trial, and being unimpeached, and testifying with di-
rectness and intelligence, it could not be otherwise
than that his testimony would have great weight
with the jury.

While the general rule is that witnesses must
speak to facts, yet, upon questions of skill or science,
men who have made the subject-matter of investiga-
tion the object of their particular study are compe-
tent to give their opinions in evidence.    But they
will not be permitted to state their opinion upon
any point the jury has to decide.    1 Phil. on Ev.
(case Hill & E. notes, * 778).    Deductions from facts
belong to the jury, and when the examination ex-
tends so far as to substitute the opinion of the wit-
ness, upon the very issue in controversy, for that
of the jury, the province of that tribunal is unwar-
rantably invaded.    Necessity alone is the ground upon
which expert testimony rests, and the moment this
necessity ceases, the exception to the general rule,
which requires facts and not opinions from witnesses,
ceases also.    "Hence," say the Supreme Court of
Pennsylvania, in *Graham* v. *Penn Co.*, 139 Pa. St.,
149, "whenever the circumstances can be fully and
adequately described to the jury, and are such that
their bearing on the issue can be estimated by all
men, without special knowledge or training, opinions

of witnesses, experts or otherwise, are not admissible."

While it may be difficult often to fix the exact line between competent and incompetent expert testimony, yet, we think it clear that in no case can the witness be allowed to give an opinion upon the very issue involved. To permit this would be to substitute the opinion of the expert for that of the jury, whose duty it is to find the facts, and whose verdict is only an expression of their deduction from these facts. Such has been the holding in a great number of cases, only a few of which will be referred to.

In *Kansas P. Ry. Co.* v. *Pearcy* (Kansas Sup. Court), 11 A. & E. R. R. Cases, 260, the plaintiff, who had sued for personal injuries sustained in coupling cars, when on the witness stand, over the objection of the defendant, was permitted to state that he would not have been injured had the car approached at the usual and proper rate of speed, and another witness stated that a brakeman was compelled to rely to a great extent on the prudence of the party handling the engine. This testimony was held incompetent, as invading the province of the jury. In *Muldowney* v. *Ry. Co.*, 36 Ia., 462, a brakeman, while attempting to couple cars, was crushed between two bumpers which failed to come together evenly. On the trial, various parties of extensive experience in handling cars were permitted to give their opinion that if the drawheads in question

had been properly matched, there would have been no danger of the person making the coupling being crushed. For error in admitting this testimony, the case was reversed.

A brakeman brought an action for injuries received while coupling cars, and the opinions of experts that he was careless in the manner he did his work, was deemed inadmissible. *Hopkins* v. *R. R.*, 78 Ill., 32. To the same effect is *Baxton* v. *Sommersett*, 121 Mass., 446.

*Central R. R.* v. *Ryals* (Georgia), 11 S. E. R., 497, was an action for injuries to an employe, and it was held that the opinion of. a witness that the backing of the train, which was the immediate cause of the injury, was done carefully and without negligence, was inadmissible; and in *Mantel* v. *Chicago, Mil. & St. P. R. R.*, 33 Minn., 62 (S. C., 19 A. & E. R. R. C., 362), the Court said: "Whether this or that act of plaintiff or defendant was negligence, and whether due care required this or that to be done, are not matters of expert testimony. They are not matters of science or skill, as might be such a question, how long would it take to stop a train or street car going at a designated rate of speed, but they are matters of judgment and common experience, to be determined upon the facts and circumstances of the case, by the jury, who are as competent to determine them as any witness can be."

This principle was applied still later by the Su-

preme Court of Minnesota, in an action brought to
recover for an injury sustained from the giving
away of the cables of an elevator in which plaintiff
was riding.   On the trial, one of the defendant's
witnesses was asked the question "whether or not
there is anything in the construction of that eleva-
tor, and in the appearance of the cable, that would
suggest to a prudent man the necessity for exam-
ination," etc.   This question was excluded as incom-
petent, on the objection of the plaintiff, and the ac-
tion of the trial Judge was complained of in the
Supreme Court.   To this complaint that Court said:
"The question to what extent the apparent wear
impaired the strength of the cable, might have been
one for an expert, but, as held in *Mantel* v. *Chi-
cago, M. & St. P. R. R. Co.*, 33 Minn., 62,
whether due care required this or that to be done,
is not a question for expert testimony.   Whether
prudence required an examination of the cable was
for the jury to determine upon the facts and cir-
cumstances of the case."   *Goodsell* v. *Taylor*, 41
Minn. (S. C., 42 N. W. R., 873; 4 L. R. A., 673).
See, also, *Lawrence* v. *Hudson*, 12 Heis., 671; *Boyle*
v. *Moony*, 122 Mass., 251; Bailey on Master & Ser-
vant, 531.   Cases illustrating this principle might be
indefinitely cited, but these are sufficient for our
purpose.   So, in the present case, we say that, while
this expert witness might give his opinion as to the
effect of the breaking of strands of wire upon the
ultimate strength of the cable or of the process of

crystallization, the result of time and friction upon the ultimate strength of the cable, and also as to the probable life of a cable under given circumstances, yet it was not competent for him to say that, under the facts embraced in the hypothetical case, a prudent man would have discontinued its use, and it was error in the trial Judge to permit him to make this statement.

Many errors are assigned upon the action of the trial Judge, both upon his charge as given, as well as upon his refusal to grant certain special requests submitted to him by the defendants below. As for the error already pointed out this case must be reversed and remanded for a new trial, we do not deem it profitable to take up these assignments seriatim and dispose of them. Only two or three will be considered. It is complained that the Circuit Judge made a serious error in the beginning of his charge, with regard to the duty of the master to his servant in the matter of providing him with safe machinery to work with, and that its prejudicial effect was not sufficiently corrected by laying down the correct rule on this subject in a subsequent part of his charge.

The particular error pointed out is contained in the statement that "the master owes to his servant or employe the duty to provide safe and suitable machinery where that is necessary." It is conceded that this error, as far as it could be, is corrected by the announcement of the proper rule

in a later part of his instructions, yet it is insisted that the evil already done was not entirely neutralized by this curative paragraph. While it is true that a trial Judge cannot be expected to state the whole law in one clause, and that he will not ordinarily be put in error if his charge, taken as a unit, is sound, yet it is true, that to state an unsound proposition on one page, to be followed by a correct announcement of the law on another, is an objectionable method, which may put the party against whom the error is committed at disadvantage, and leave the jury at a loss to determine what is and what is not the law of the case. We think the charge in this case is justly amenable to the criticism, in this regard, to which it has been subjected.

The trial Judge further said to the jury: "If you find from the evidence that a wire elevator cable lasts for an unlimited length of time, then that ought to end this case, and your verdict ought to be for defendant. On the other hand, if the evidence establishes the fact that a wire elevator cable will live for only a specified length of time when used, and should be taken out and removed even though there be no certain evidence of decay, and you further find from the evidence that the wire elevator cable of defendants was used for a greater length of time than it was safe to use it, you should find for plaintiff."

In this paragraph it will be seen that the trial

Judge is calling the attention of the jury to the phase of case as it was developed by the expert witnesses—that is, the longevity of cables — and in doing so he erroneously tells the jury distinctly that the liability or nonliability of the defendants depends upon whether these cables would last for a limited or an unlimited time. If the former be found true, and the defendants used them beyond the limit, they were absolutely, and without more, liable; if, however, the alternative proposition be correct, then they were not liable.

This was error. It was not enough to say that the defendants were liable, if it was found the life of these cables was limited, and that defendants used them beyond these limits; but he should rather have said to the jury that if they found that this life was limited, and that the defendants knew, or by the exercise of reasonable care could have known this fact, and continued to use them for a greater length of time than was safe, then they should find for plaintiff, if they, at the same time, found that the plaintiff was in the exercise of ordinary care.

It is said, however, that this objection is removed by two other clauses—one earlier and the other found later in the charge. These clauses are located in remote parts of the charge, and in them, in different but general formulas, the jury are told that where there is no knowledge of danger, and, by exercising ordinary care, no means of discovering it, then the owner is not chargeable with negligence. We very

much doubt whether the vice in the paragraph complained of is negatived by these general statements, and, if there was no other error in the record, this would possibly render necessary a reversal of the judgment.

The defendants below, among other special requests, submitted the following: "As a general rule, when an appliance, machine, or structure not obviously dangerous has been in daily use for years, and has uniformly been found adequate, safe, and convenient, it may be continued without the imputation of negligence." This request was properly refused, " as it laid out of account that the strength of machinery ordinarily becomes impaired by wear, and that, to ascertain if such wear has rendered it unsafe, may require some examination. One has no right to assume because a machine never has given away that therefore it never will, especially of a machine upon the safety of which the lives of others may depend." *Goodsell* v. *Taylor*, *supra.*

The master "is not only bound, in the first instance, to use reasonable care in the selection of machinery and appliances, but also to exercise reasonable and proper watchfulness to see that it is kept in proper condition, because, however perfect they may be when bought, they are liable, from ordinary use and wear, to get out of repair, and such care and watchfulness is due to guard against defects that may arise from use as the nature of the business and the risks incident thereto demands." Wood on ·

Master & Servant, Sec. 329. And, it may be added, in the words of the same author in Sec. 326, that, while "the servant is bound to see for himself such risks and hazards as are patent to observation, and is bound to exercise his own skill and judgment in a measure, and cannot blindly rely upon the skill and care of his master," yet, "where the danger is not patent, he has a right to presume that the master has discharged his duty, and that the appliances of the business, are reasonably safe and free from hazard." And this duty of taking care that the machinery is safe and reliable, devolved by law on the master, "involves the idea of an active duty imposed, the failure to perform which, when injury occurs, is such · negligence as raises a liability for the damages resulting (*Guthrie* v. *Railroad*, 11 Lea, 372), unless it be that the negligence of the employe proximately contributed to the injury. And it may be added that this duty of the employer to exercise reasonable care to see that the machinery and its appliances which he provides for his employe" are suitable and sufficient, and as safe as care and skill can make them, is "in proportion to the importance of the business and the perils incident to it." *N. & C. R. R.* v. *Elliott*, 1 Cold., 616; *N. & C. R. R.* v. *Jones*, 9 Heis., 28.

For the error indicated, the judgment must be reversed and the case remanded for a new trial.