## City of Geneva v. Mary E. Burnett.

Filed July 1, 1902. No. 11,974.

Commissioner's opinion, Department No. 3.

1. **Personal Injury:** Petition: Negligence: Omission of the Word "Negligence": Allegation of Facts. A petition in an action for personal injuries that states facts and circumstances from which the inference of negligence by the defendant is inevitable, is not defective for omitting the use of the word "negligence," or its derivatives.

2. **Evidence:** X-Ray Pictures. Under the proper precautions and with necessary explanations, what are known as "X-ray pictures" are admissible in evidence for the purpose of showing the condition of the internal tissues of the body.

Error from the district court for Fillmore county. Tried below before Stubbs, J. *Affirmed.*

*J. D. Hamilton* and *Charles H. Sloan,* for plaintiff in error.

*Robert J. Sloan, contra.*

Ames, C.

The defendant in error, plaintiff below, alleged in her petition that on the 12th day of December, 1898, she suffered personal injury from a loose board forming part of the structure of one of the sidewalks in the city of Geneva, and "that said board was lying loose across the stringers in said sidewalk not being nailed to any of them. And that said board was loose and that said sidewalk was in

bad condition and repair, was well known to the mayor and council of said city and to the officers whose duties it was to repair and oversee the same. And that for a long time previous to the 12th day of December, 1898, and ever since said date the authorities above mentioned allowed said sidewalk to be and remain in a dangerous condition." A general demurrer was interposed to this petition, supported by the argument that it does not sufficiently allege that the city authorities were negligent with respect to the matter complained of. The demurrer was properly overruled. If the circumstances were such as the petition narrates, the inference of negligence is inevitable. The use of the word "negligence" would not have made the charge any more specific or emphatic. Its omission from the pleading, therefore, did not render the document defective. The answer denied "that the said walk was unsafe and dangerous, or that it had any notice of such defect in the walk and that the defect, if any, which caused the injury was latent and unknown to it, although it had used diligence in the premises." This is an admission of the defect charged, coupled with a denial of notice and negligence. It is like a denial that a note is genuine, coupled with an allegation that, if genuine, it was obtained by fraud. A party can not deny and confess and avoid the same cause of action in the same pleading. *Dinsmore v. Stimbert,* 12 Nebr., 433. The answer also alleged that if the plaintiff had suffered any injury it was incurred by her own carelessness, without the fault or negligence of the defendant. The reply was a general denial. The evidence concerning all matters in issue was conflicting. The plaintiff recovered a verdict and judgment, which the defendant seeks to set aside by this proceeding.

The plaintiff testified that her foot and ankle, which were injured by the accident, were previously thereto in a sound and healthy condition, and that the injury had produced a permanent, or at least prolonged disability. Some medical men testified that one of the consequences

37

of the injury was, or might probably be, a calcareous deposit in the tissues of the foot, and that they had examined the foot of the plaintiff, who was a young person, by means of an apparatus for making or taking what are called "X-ray pictures" of it, which disclosed the presence of such a deposit, and that, in their opinion, the deposit was the result of the injury. Plaintiff in error objects because some of the pictures so obtained were admitted in evidence. There was a very thorough and complete explanation of the time, manner and circumstances of the taking of the pictures, and of the condition of the foot which they were supposed to indicate; but it is insisted that they were secondary evidence, and so not admissible. From the testimony of the witnesses, we are convinced that no better evidence of the condition of the interior tissues of the foot could have been obtained, without a surgical operation, to which the plaintiff was not called upon to submit. We do not think that the ruling complained of was erroneous.

Complaint is also made of the refusal by the court to give certain instructions requested by the plaintiff in error, but we think they are all of them substantially embodied in a series of instructions given by the court of its own motion, which fairly stated the law, and submitted the issues to the jury.

The verdict and judgment are moderate in amount, and we recommend that they be affirmed.

Duffie and Albert, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the verdict and judgment of the district court be

　　　　　　　　　　　　　　　AFFIRMED.

NOTE.—*Evidence.—X-Ray Process.*—Where a witness has qualified as a physician and surgeon, familiar with fractures and with the X-ray process of determining the existence of a fracture, he is competent to testify as to his opinion as to an alleged fracture of plaintiff's leg, based upon an X-ray negative of the injured limb taken by himself. *Miller v. Dumon*, 24 Wash., 648.

An X-ray photograph is admissible in evidence, when verified by

proof that it is a true representation of an object which is the subject of inquiry. *Miller v. Dumon*, 24 Wash., 648.

An X-ray photograph, showing the overlapping bones of one of the legs of plaintiff, broken by an injury for which suit is brought, taken by a physician and surgeon familiar with fractures and with the process of taking such photographs, who testifies that it accurately represents the condition of the leg, is admissible in evidence. *Bruce v. Beall*, 99 Tenn., 303, 307, 308.

X-ray pictures may be admitted in evidence if properly taken. *De Forge v. New York, N. H. & H. R. Co.*, 178 Mass., 59.

In an action to recover for personal injuries consisting of a fracture of the bones of the plaintiff's left foot, the plaintiff put in evidence X-ray pictures of the plaintiff's feet printed from a glass plate on which the feet were designated in pencil as "left" and "right," respectively, on the assumption that the true left and right were reversed in the printed pictures. A witness for the plaintiff testified that there was an enlargement of the bone of the foot marked "left" in the picture which was the result of fracture, and on cross-examination said that, leaving the picture out, there was nothing to disclose to the eye any fracture. The defendant then offered in evidence the glass plate from which the picture introduced by the plaintiff had been printed and pictures printed from it by an X-ray expert, and offered to show that the X-ray process placed the right foot on the right side of the plate and the left foot on the left side of the plate, and that in printing it the object would be reversed and the true right and left would appear; and that the foot marked "left" in the plaintiff's pictures, which his witness had testified showed an enlargement of the bone, was really the right foot which was not injured. This evidence as well as the glass plate and pictures offered by the defendant were excluded. *Held*, That the plate and pictures and explanatory evidence should have been admitted. *Held, also*, that the fact, which appeared, that the glass plate had on it the letters L and R which had been placed there since the pictures put in evidence by the plaintiff had been printed, was no reason for excluding the plate, as these letters did not in any way obscure the portion of the left foot in controversy, and were no more objectionable than the words added in pencil to the plaintiff's pictures. *Held, also*, that the exclusion of the plate and pictures was not within the discretion of the presiding judge, there being no question of verification. *De Force v. New York, N. H. & H. R. Co.*, 178 Mass., 59.

A Connecticut court is said to have held against the X-ray photograph, Roentgen-rays or X-rays.

Cathodal or Kathodal-rays, a newly-discovered (December, 1895) form of energy that is radiated from a highly exhausted discharge tube, actuated by an induction coil or other suitable apparatus. The rays are so called from their discoverer, William Conrad Roentgen (German physicist, born in Holland, 1845), who gave them the name "X-rays" because he was ignorant of their precise nature, the letter

X being the usual algebraic symbol for an unknown quantity. The fact that these rays will penetrate an opaque substance is, perhaps, no more wonderful than that the radiations of heat from a furnace will penetrate the wall of a room. The X-ray is a most valuable diagnostic and evidential agent.

Photographs showing interior surfaces, are competent to establish personal identity. *Ruloff v. State*, 45 N. Y., 213; *Luke v. Calhoun County*, 52 Ala., 115, 118; *Udderzook v. Commonwealth*, 76 Pa. St., 340; *Cowley v. People*, 83 N. Y., 464, 476.

Photographs showing exterior surfaces, are admissible to identify premises. *Blair v. Pelham*, 118 Mass., 420; *Church v. City of Milwaukee*, 31 Wis., 512.

*In case of handwriting.*—Upon the issue of the genuineness of a signature, magnified photographic copies of this signature, and of admitted genuine signatures of the same person, are admissible in evidence, accompanied by competent preliminary proof that the copies are accurate in all respects except as to size and coloring. *Marcy v. Barnes*, 16 Gray [Mass.], 161. The opinion of a photographer with proper experience is also competent expert testimony. *Marcy v. Barnes, supra.*

The opinion in *Bruce v. Beall, supra*, was handed down twenty-one months after Roentgen announced his discovery. In such a short time after the discovery of a German scientist could a Tennessee court judicially know its import!

Roger Bacon refers to a recipe for making gunpowder (which he, probably, obtained from the Moors in Spain), in 1267. As to how long thereafter, in an age without printing presses and telegraphs, a court could have judicially known that gunpowder would explode, *quære.*

For an excellent account of the legal aspect of the X-ray process, see A System of Legal Medicine, article by Allan McLane Hamilton, Vol. II., pp. 630*a*-630*g*, and Bibliography at end of article.

The recent discovery of the destructive action of X-rays upon the skin, has been advanced as an objection to their use in cases where an examination has been ordered; and such an examination has been performed under the impending penalty of a suit for personal injury in event of disastrous consequences. This was the case on the trial at *nisi prius* of *Hutchinson v. Atlantic R. Co.*, though no such question was raised on review or could have been, as the verdict was for plaintiff. Hamilton (cited above), p. 630*b*; N. Y. Supp., vol. 53, p. 1076.—W. F. B.

For extension of this note, see *Carlson v. Benton*, 66 Nebr.