## FRANK A. CARLSON V. EUGENE A. BENTON ET AL.

FILED NOVEMBER 19, 1902. No. 12,151.

Commissioner's opinion, Department No. 3.

1. **X-Ray Photograph:** EVIDENCE: FOUNDATION. To constitute a foundation for the introduction of an X-ray photograph in evidence, it is not essential that it appear that it was taken by a competent person, nor that the condition of the apparatus with which it was taken and the circumstances under which it was taken, were such as to insure an accurate picture, where it has been shown by the evidence of competent witnesses that it truly represents the object it is claimed to represent.

2. **Reception of Evidence:** DISCRETION OF JUDGE. The discretion

of the trial judge in the reception of such evidence, is not absolute, and may not be exercised arbitrarily; and where the evidence as to the accuracy of the photograph leaves no room for a difference of opinion, its exclusion on the ground that a sufficient foundation has not been laid, is an abuse of discretion.

3. **Entry of Judgment After Trial Term.** The district court has authority to enter a judgment on a verdict at a term subsequent to that at which the trial was had and at which the motion for a new trial was overruled.

4. ————: MOTION FOR NEW TRIAL: REVIEW. At a term subsequent to that at which the motion for a new trial was overruled the unsuccessful party asked the court to render judgment on the verdict. *Held*, That such party was not thereby precluded from obtaining a review of errors in this court.

ERROR from the district court for Merrick county. Action in the nature of case against defendants for alleged malpractice as physicians and surgeons. Tried below before GRIMISON, J. Verdict and judgment for defendants. Plaintiff brings error. *Reversed.*

*William T. Thompson* and *George W. Ayres,* for plaintiff in error.

*J. W. Sparks* and *John Patterson, contra.*

ALBERT, C.

It is alleged in the petition, among other things, that the plaintiff sustained a fracture of the bones of his leg below the knee and a dislocation of one of said bones, and that the defendants, at his instance and request, undertook, as physicians and surgeons, to treat and heal such injuries; that because of the negligence and lack of skill on the part of the defendants, the ends of the broken bones were not properly brought together, and the dislocation was not reduced; that by reason of such omission, the fractured bones failed to unite properly, leaving the plaintiff lame and causing him great bodily pain. The answer admits the fracture of the bones, as alleged in the petition, and that the defendants were employed as physicians and sur-

geons to reduce such fractures; all the other allegations of the petition are denied. The answer also charges contributory negligence. A trial resulted in a verdict for the defendants. Judgment accordingly. The plaintiff brings error.

On the trial the plaintiff offered in evidence an X-ray photograph of his injured leg, taken after his injuries had been treated by the defendants. It was objected to, on the ground that a sufficient foundation had not been laid. The objection was sustained, and the ruling of the court in that behalf is now assigned as error. The defendants insist that the ruling of the court was right, because the competency of the person taking the photograph, the condition of the apparatus with which it was taken, and that the circumstances under which it was taken, were such as to insure an accurate picture, had not been sufficiently shown in evidence. To show such matters is simply one way of establishing the accuracy of the picture. We do not understand that such way is exclusive. Before the photograph was last offered in evidence, the plaintiff had introduced evidence tending to prove all the material allegations of his petition. In addition, Doctor Arnold had testified, in effect, after showing his competency as an expert, that he had examined the injured leg by means of the X-ray, after it had been treated by the defendants, and found the fracture and dislocation alleged in the petition. His testimony tended to show that neither the fracture nor the dislocation had been properly reduced. He further testified that the photograph offered in evidence was a true representation of the position, location and condition of the bones of the injured leg, as they were at the time he made the examination. The testimony of Doctors Robinson and Hunt is to the same effect, save that the former ascertained the position, location and condition of the bones by manipulation. The means employed by the latter to ascertain such facts do not appear. In view of this testimony we do not deem it necessary to go into the question of the competency of the person who took the photograph, the con-

dition of the apparatus by means of which it was taken nor the circumstances under which it was taken. Such matters would be far less satisfactory evidence, to the ordinary mind, that the photograph was an accurate representation of what it was claimed to represent than would the testimony of witnesses who were competent to compare it with the original and who had thus compared it. The defendants cite *Bruce v. Beall*, 41 S. W. Rep. [Tenn.], 445, in which the court says: "It is not to be understood, however, that every photograph offered as taken by the cathode or X-ray process would be admissible. Its competency, to be first determined by the trial judge, depends upon the science, skill, experience and intelligence of the party taking the picture and testifying with regard to it, and, lacking these important qualifications, it should not be admitted." The rule thus announced was applicable, doubtless, to the facts before the court in that case; but it is too narrow to be regarded as a general rule. The novelty of the X-ray photograph does not extend to the rules governing its reception in evidence. Maps, photographs, drawings and models are admissible in evidence when it is shown that they fairly represent the object or objects under investigation. There is no good reason why the same rule should not apply to photographs of this character. But the defendants insist that the admission of such evidence rests within the discretion of the trial judge, and consequently the exclusion of the photograph is not reversible error. Whatever discretion the trial judge may have in matters of this kind, such discretion is not unlimited, nor may it be exercised arbitrarily. *Reimer v. New York, N. H. & H. R. R. Co.*, 59 N. E. Rep. [Mass.], 671. The uncontradicted testimony of the three surgeons mentioned leaves no room for a difference of opinion as to the accuracy of the photograph offered in evidence. To exclude it under such circumstances, on the ground that a sufficient foundation had not been laid, was an abuse of discretion.

Lastly, it is urged that, whatever error may have been in the exclusion of the photograph, it was error without

prejudice, because there is no conflict in the testimony on the question of the existence of the dislocation and improper union of the bones. The record does not bear out this statement, especially as relates to the dislocation. But if it did, it would not be safe to say that the exclusion of the photograph worked no prejudice to the plaintiff. The condition and position of the bones of the plaintiff's leg after it had been treated by the defendants, were among the matters to be investigated by the jury. It is hardly possible to convey such matters to the average mind as clearly by oral testimony as it may be conveyed by means of a photograph. The verdict of the jury is general, and it would be rash to assume that it was not influenced by the exclusion of the evidence in question.

The court, on its own motion, among other things, instructed the jury as follows:

"3. You are further instructed that the material allegations of the petition, not so admitted and assumed, as set forth in the last preceding instruction, and upon which you must deliberate and make findings before you can render a verdict in this case are as follows: First. That the defendants carelessly, unskillfully and negligently failed to bring the ends and parts of the broken bones into apposition so that they could properly unite together; that is to place each part opposite to and in close contact with the part from which it was broken. Second. That the defendants carelessly, negligently and unskilfully failed to reduce the dislocation of the fibula of the plaintiff's leg; that is to place the joint in proper position. Third. That defendants carelessly, negligently and unskilfully failed to apply to said fractures and dislocations the proper extensions and counter-extensions, splints and bandages to retain said broken bones and dislocated bone in their proper position. Fourth. That the defendants carelessly, negligently and unskillfully bandaged and dressed said injured leg and dislocated joint so that they could not properly heal and unite."

"4. You are instructed that the burden is upon the

plaintiff and it is for him to prove every material allegation set forth in the last preceding instruction by a preponderance of the evidence, if you find that the evidence bearing upon any one of these allegations is evenly balanced, or that it preponderates in favor of the defendants, then the plaintiff can not recover upon such allegation, and if you find that the evidence bearing on all these allegations is evenly balanced, or that it preponderates in favor of the defendants, then the plaintiff can not recover and you should find for the defendant."

The plaintiff complains of these instructions, because they required him to establish "every material allegation" of the petition, specified in the third paragraph of the charge by a preponderance of the evidence. We do not think the instruction fairly construed admits of that construction, especially in view of a subsequent instruction, in the following language:

"If you believe from the evidence that the defendants failed to bring the ends and parts of the broken bones into apposition so that the bones could properly unite and that this failure resulted from the want of ordinary skill and care on the part of the defendants; or if you believe from the evidence that defendants failed to reduce the dislocation, if such dislocation exists, of the fibula of plaintiff's leg and that such failure resulted from want of ordinary skill and care on the part of the defendants, or if you believe from the evidence that defendants failed to apply to plaintiff's leg such extensions and counter-extensions, splints and bandages as would be considered necessary under like circumstances by physicians and surgeons of good repute in the ordinary practice of their profession, or if you believe from the evidence that defendants did not bandage and dress plaintiff's leg with ordinary skill and care. And if you further find that the injuries to plaintiff's leg were caused by any one or more of these failures or omissions you will find for the plaintiff."

The defendants insist that the plaintiff has no standing in this court, because "the court was without any author-

Carlson v. Benton.

ity to render a judgment in said cause at another and different term of the district court, than that at which the case was tried, and the motion for a new trial was overruled and a judgment rendered thereon," and because the judgment complained of was entered at the plaintiff's request. It is true, the judgment was rendered at a term subsequent to that at which the motion for a new trial was overruled; but we know of no rule that requires the final judgment to be rendered at the same term. The judgment is the logical product of the prior proceedings in the case. With the record of such proceedings before it, the court not only had authority, but it was its duty, to render the judgment. It is also true the record shows that the judgment was rendered on the plaintiff's motion. The motion was made at a term subsequent to the term at which his motion for a new trial had been denied. He had a right to a hearing in the court of last resort. A final judgment was necessary to that end. It would be a mockery of justice to deny him a hearing in this court because he asked the trial court to do that without which he could not obtain such hearing.

We recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

NOTE.—*Roentgen Rays.*—The discovery of the X-rays is comparatively recent. The utility and trustworthiness of the results of this process, are already so well established as scientific facts as to be matter of judicial knowledge. And, if the fact that the exposure of the person to these rays is harmless becomes as well established in science as is the accuracy of the photographs taken by them, there is as much reason why in a proper case the plaintiff should be required to submit his neck to those rays for the purpose of

photographing it as there is for requiring a party to submit his person to a physical examination.* Whether science is yet sufficiently advanced to justify the courts in taking judicial notice that exposure to X-rays is not injurious to the subject, *quære*. In this particular case, the evidence was ruled out for insufficient foundation. *Wittenberg v. Onsgard*, 78 Minn., 342, 349.—W. F. B.

See opinion of Mr. Commissioner AMES in *City of Geneva v. Burnett,* 65 Nebr., 464, and note.—W. F. B.

---

* The court had previously held that, in a proper case, the plaintiff could be compelled to a physical examination under pain of having his case dismissed. *Wanek v. City of Winona*, 78 Minn., 98. —W. F. B.