GEORGE A. LUPTON v. THE SOUTHERN EXPRESS COMPANY.

(Filed 20 October, 1915.) ·

1. **Evidence—X-Ray Photographs—Accuracy.**
    X-Ray photographs taken of a personal injury alleged to have been
    negligently inflicted by the defendant, in an action to recover damages
    therefor, may, with proper safeguards as to their accuracy, be used by
    the witness who has made them in explaining his evidence and be shown
    by him to the jury for their consideration and enlightenment.

2. **Same—Expert Testimony—Exhibits to Jury.**
    Where an X-Ray picture of a personal injury, pertinent to the inquiry
    in an action to recover damages, has been made by a medical expert, who
    testifies to some experience in making such pictures, and it is a reason-
    able inference from his evidence that it was an accurate and true repre-
    sentation, and his whole evidence shows that he believes it to be so, it
    is sufficient evidence of the accuracy of the photograph for the expert
    to explain his testimony therewith and exhibit them to the jury.

3. **Appeal and Error—Evidence—Statement of Contentions—Admissions.**
    Where the evidence of both parties are in harmony with the establish-
    ment of a certain fact, and the trial judge has erroneously stated it as
    an admission, the objecting party should have caused the correction to
    have been made at the time, and in this case no reversible error is found,
    the judge having clearly stated the contentions of the parties and applied
    the law applicable to the evidence.

4. **Instructions—Trials—Charge as a Whole—Harmless Error.**
    · The error complained of in the charge in this case is untenable, being
    taken to statements by the court of the contention of the parties, which
    arose from the evidence, and to single expressions taken from a para-
    graph, the charge, construed as a whole, being correct; and this applies
    · to a statement of the court, relating to the contention of the parties, that
    compensation cannot be awarded for physical pain and mental suffering,
    which taken alone would be error.

APPEAL by defendant from *Connor, J.,* at the June Term, 1915, of
CARTERET.

Action to recover damages for personal injury. The plaintiff intro-
duced evidence tending to prove that while on the platform of the rail-
road company at New Bern, for the purpose of taking passage on the
train, an agent and employee of the defendant negligently ran a heavy
truck against him, striking him violently in the back, causing him to
fall, and the truck passed over one of his feet, to his serious injury.

The defendant introduced evidence tending to prove that there was no
negligence; that the plaintiff was standing on the platform holding to a
post, and, as the truck passed him that his foot slipped and went under
the truck.

Dr. Pollock, a witness for plaintiff, testified:

I am a doctor of medicine. (Admitted to be an expert.) Have had
some experience in X-Ray work. Took X-Ray photograph of Lupton's

foot, as shown by plates in my hand. Took photographs of his right foot. No injury there. Also of left foot. (Shows plates to the jury. Defendant objects; overruled; defendant excepts.) Photograph of left foot shows that bone of fourth toe of foot has been broken. Plate shows callous formed at broken place. This callous would cause pain and is permanent. Pain caused by callous on bone of fourth toe rubbing against bone of third toe. Friction sets up inflammation and causes pain.

Cross-examination: Plate does not show injury to big toe, nor whether injury to fourth toe was done in childhood or not. I did not examine or photograph Lupton's back. Know Dr. Primrose. He would possibly know, after examination, whether bones were broken or not. Callous does not necessarily form on both sides of broken bone. X-Ray is only sure way, except by operation, to ascertain whether bones are broken or not.

At the conclusion of the evidence there was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

The court charged the jury, among other things, as follows:

In this case, counsel for plaintiff and defendant, during their argument to you, have admitted that George A. Lupton, the plaintiff, while standing at or near the shed of the Norfolk Southern Railroad Company, at New Bern, was struck by a truck being moved by employees of the defendant, the Southern Express Company; that while engaged in conversation with Mr. Bell, to whom he had just paid a bill, and while putting his pocketbook into his pocket, the truck struck him. Defendant excepted. There was a verdict and judgment for the plaintiff, and the defendant excepted and appealed.

*C. R. Wheatly and Abernathy & Davis for plaintiff.*
*Julius F. Duncan for defendant.*

ALLEN, J. There is no objection to the description of the injury as disclosed by the X-Ray plates. The exception is only to the exhibition of the plates to the jury, and as there is nothing to show any variance between the plates and the description given by the witness, we might dispose of the exception upon the ground that the ruling permitting the jury to see the plates, if erroneous, is harmless. We are, however, of opinion that it was competent to introduce the plates and to permit the jury to see them.

What was said in *Frank v. Bank*, 37 N. Y. Sup. Ct., 34, which is approved in *Bank v. McArthur*, 165 N. C., 374, in reference to the microscope, is equally pertinent as applied to the X-Ray: "The administration of justice profits by the progress of science, and its history shows it to have been almost the earliest in antagonism to popular

delusions and superstitions. The revelations of the microscope are constantly resorted to in protection of individual and public interests. It is difficult to conceive of any reason why, in a court of justice, a different rule of evidence should exist in respect to the magnified image presented in the lens of the photographer's camera and permanently delineated upon the sensitive paper. Either may be distorted or erroneous through imperfect instruments or manipulation, but that would be apparent or easily proved. If they are relied upon as agencies for accurate mathematical results in mensuration and astronomy, there is no reason why they should be deemed unreliable in matters of evidence. Whenever what they disclose can aid or elucidate the just determination of legal controversies, there can be no well-founded objection to resorting to them."

It has been held in several cases in our reports that the ordinary photograph when shown .to be a true representation and taken under proper safeguards is admissible in evidence (*Davis v. R. R. Co.*, 136 N. C., 115; *Pickett v. R. R.*, 153 N. C., 148), and the same rule prevails as to photographs taken by the X-Ray process.

"While a picture produced by an X-Ray cannot be verified as a true representation of the subject in the same way that a picture made by a camera can be, the rule in regard to the use of ordinary photographs on the trial of a cause applies to photographs of the internal structure and conditions of the human body taken by the aid of X-Ray, when verified by proof that they are a true representation. It has been held that, to constitute a foundation for the introduction of an X-Ray photograph in evidence, it is not essential that it appear that it was taken by a competent person, nor that the condition of the apparatus with which it was taken and the circumstances under which it was taken were such as to insure an accurate picture; but where it has been shown by the evidence of competent witnesses that it truly represents the object it is claimed to represent, there is sufficient foundation for its admission." 17 Cyc., 420.

"Photographs taken by X-Ray process are admissible upon the same principles under similar circumstances with like effect as ordinary photographs." Enc. Ev., vol. 9, 775.

"The accuracy of a properly taken X-Ray photograph of the bones of a living body will be judicially known." 1 Chamb. Mod. Ev., vol. 1, sec. 729.

"The process of X-Ray photography is now as well established as a recognized method of securing a reliable representation of the bones of the human body, although .they are hidden from direct view by the surrounding flesh, and of metallic or other solid substances which may be imbedded in the flesh, as was photography as a means of securing a

representation of things which might be directly observed by the un-aided eye at the time when photography was first given judicial sanction as a means of disclosing facts of observation, and for that purpose X-Ray photographs, or sciagraphs, or radiographs, as they are variously called, have been held admissible on the same basis as photographs. *Bruce v. Beall,* 99 Tenn., 303, 41 S. W. Rep., 445; *Miller v. Dumon,* 24 Wash., 648, 64 Pac. Rep., 804; *Chicago, etc., Electric Co. v. Spence,* 213 Ill., 220, 72 N. E. Rep., 796; *Carlson v. Benton,* 66 Neb., 486, 1 Am. Cas., 159, 92 N. W. Rep., 600; *Geneva v. Burnett,* 65 Neb., 464, 91 N. W. Rep., 275; 1 Wigmore Evidence, paragraphs 795-797. As is said in *Mauch v. Hartford,* 112 Wis., 40, 87 N. W. Rep., 816: 'It is the duty of courts to use every means for discovering the truth reasonably calculated to aid in that regard. In the performance of that duty every new discovery, when it shall have passed beyond the experimental stage, must necessarily be treated as a new aid in the administration of justice in the field covered by it. In that view, courts have shown no hesitation, in proper cases, in availing themselves of the art of photography by the X-Ray process.' " *S. v. Matheson,* 130 Iowa, 440.

This case is also reported in 8 A. and E. Ann. Cases, and the editor states his conclusion, in the note on page 435, to be: "There seems to be no doubt of the admissibility of X-Ray photographs in evidence upon a proper occasion. It is now a recognized fact that by the aid of proper apparatus a picture of the framework of the human body may be obtained that will more or less sharply define the skeleton and any foreign substance that may be lodged in the body. Therefore X-Ray photographs are admissible in evidence when proper proof of their accuracy and correctness is produced. *Miller v. Mintum,* 73 Ark., 183, 83 S. W. Rep., 918; *Chicago, etc., Electric R. Co. v. Spence,* 213 Ill., 220, 72 N. E. Rep., 796; *Jameson v. Weld,* 93 Me., 345, 45 Alt. Rep., 299; *De Forge v. New York, etc., R. Co.,* 178 Mass., 59, 59 N. E. Rep., 669; *Carlson v. Benton,* 66 Neb., 486, 1 Ann. Cas., 159, 92 N. W. Rep., 600; *Bruce v. Beall,* 99 Tenn., 303, 41 S. W. Rep., 445. See, also, *Frazer v. California St. Cable R. Co.,* 146 Cal., 714, 81 Pac. Rep., 29; *Sias v. Consolidated Lighting Co.,* 73 Vt., 35, 50 Alt. Rep." *Carlson v. Benton,* 66 Neb., 486; *Bruce v. Beall,* 99 Tenn., 303, and other cases cited in the note to the quotation from Cyclopedia of Law, support the text.

There was also no error in permitting the jury to see the plates. The rule, based on want of confidence in the intelligence of jurors, formerly prevailed that jurors might hear but could not see, but it has been expressly repudiated in this State. *Martin v. Knight,* 147 N. C., 578; *Nicholson v. Lumber Co.,* 156 N. C., 59.

In the first of these cases *Justice Connor,* discussing the propriety of permitting a jury to see a paper whose genuineness was in contro-

versy, says: "The purpose of the evidence is to aid the jury. Why convey information through the sense of hearing and exclude the sense of seeing? Can it be doubted for a moment that they would receive a clearer, more intelligent view of the matter in controversy if permitted to have the explanation made with the aid of their sight? We know from experience that arguments in this Court are illuminated and our apprehension of the matter in controversy made clearer by maps in cases involving the management of machinery or the situation of parties. It was supposed in the past that the average juror was not sufficiently intelligent—educated—to comprehend the fine shades of difference in handwriting. Whatever may be thought of the soundness of the reason in the past, it is manifest that it has but little force at this time. As education and intelligence have increased and the methods of illustration improved, the capacity of the 'average man' to write and pass upon the handwriting of others has advanced."

It is true that the witness who made the X-Ray photographs does not say, in so many words, that the photograph is an accurate and true representation of the condition of the foot, but this is a reasonable inference from his evidence. He had sworn that he would tell the truth; he was an expert and experienced in the manipulation of the X-Ray, and his whole evidence shows that he believed the photographs to be a true representation of the condition of the foot.

His Honor did not, at any time, tell the jury, as contended by the defendant, that the defendant admitted negligence, and if he erroneously stated that counsel for the defendant admitted in the argument that the plaintiff was struck by the truck, it was the duty of counsel to correct his error. *LaRoque v. Kennedy,* 156 N. C., 372.

All the evidence for plaintiff and defendant showed that the plaintiff was injured by the truck, and the question in controversy was how the injury occurred, and this was submitted to the jury under proper instructions, which stated fully the contentions of the defendant.

There are other exceptions to the charge which need not be considered separately. They consist principally of objections to statements of contentions of the parties, which arose upon the evidence, and to single expressions taken from a paragraph, which are free from criticism when considered in connection with the context. We would not approve the expression that adequate compensation cannot be awarded for physical pain and mental suffering, standing alone, but the whole charge shows that his Honor was indicating the difficulty of fixing a money value for physical pain and mental suffering, which all admit, and that he instructed the jury that no damages could be awarded as punishment, and only a just compensation based on the evidence.

Several exceptions are to charges favorable to the defendant.

The motion for judgment of nonsuit is not discussed in the brief and need not be considered, except to say that the evidence in the record was sufficient, if believed, to establish the negligence of the defendant and damage to the plaintiff as the proximate result thereof.

We find no error upon the trial.

No error.

CLARK, C. J., concurs, especially in the proposition illustrated by the citation from *S. v. Matheson,* 130 Iowa, 440: "It is the duty of the courts to use every means for discovering the truth, reasonably calculated to aid in that regard. In the performance of that duty, every new discovery, when it shall have passed beyond the experimental stage, must necessarily be treated as a new aid to the administration of justice in the field covered by it. In that view, courts have shown no hesitation, in proper cases, in availing themselves of the art of photography by the X-Ray process." This case is reported in 8 A. and E. Ann. Cases, 435, with annotations.

When the question of the admissibility of photographs was first presented to this Court, in *Hampton v. R. R.,* 120 N. C., 534, it was held by a divided Court that they were inadmissible, because the Court had never known of their being used; but the dissenting opinion in favor of their admissibility has ever since been held to be the law. In *Lowman v. Ballard,* 168 N. C., 16, the Court disallowed the validity of service of process over the telephone by a divided Court, but this has since been allowed, except as to summons (as to which the statute is silent) by chapter 48, Laws 1915.

The admissibility of the X-Ray photography as evidence is now well accepted in jurisprudence.