There is no objection to the description of the injury as disclosed by the X-Ray plates. The exception is only to the exhibition of the plates to the jury, and as there is nothing to show any variance between the plates and the description given by the witness, we might dispose of the exception upon the ground that the ruling permitting the jury to see the plates, if erroneous, is harmless. We are, however, of opinion that it was competent to introduce the plates and to permit the jury to see them.
What was said in Frank v. Bank, 37 N.Y. Sup. Ct., 34, which is approved in Bank v. McArthur, 165 N.C. 374, in reference to the microscope, is equally pertinent as applied to the X-Ray: "The administration of justice profits by the progress of science, and its history shows it to have been almost the earliest in antagonism to (673) popular delusions and superstitions. The revelations of the microscope are constantly resorted to in protection of individual and public interests. It is difficult to conceive of any reason why, in a court of justice, a different rule of evidence should exist in respect to the magnified image presented in the lens of the photographer's camera and permanently delineated upon the sensitive paper. Either may be distorted or erroneous through imperfect instruments or manipulation, but that would be apparent or easily proved. If they are relied upon as agencies for accurate mathematical results in mensuration and astronomy, there is no reason why they should be deemed unreliable in matters of evidence. Whenever what they disclose can aid or elucidate the just determination of legal controversies, there can be no well-founded objection to resorting to them."
It has been held in several cases in our reports that the ordinary photograph when shown to be a true representation and taken under proper safeguards is admissible in evidence (Davis v. R. R. Co., 136 N.C. 115;Pickett v. R. R., 153 N.C. 148), and the same rule prevails as to photographs taken by the X-Ray process.
"While a picture produced by an X-Ray cannot be verified as a true representation of the subject in the same way that a picture made by a camera can be, the rule in regard to the use of ordinary photographs on the trial of a cause applies to photographs of the internal structure and conditions of the human body taken by the aid of X-Ray, when verified by proof that they are a true representative. It has been held that, to constitute a foundation for the introduction of an X-Ray photograph in evidence, it is not essential that it appear that it was taken by a competent person, nor that the condition of the apparatus with which it was taken and the circumstances under which it was taken were such as to insure an accurate picture; but where it has been shown by the evidence of competent witnesses that it truly represents the object it is *Page 761 
claimed to represent, there is sufficient foundation for its admission." 17 Cyc., 420.
"Photographs taken by X-Ray process are admissible upon the same principles under similar circumstances with like effect as ordinary photographs." Enc. Ev., vol. 9, 775.
"The accuracy of a properly taken X-Ray photograph of the bones of a living body will be judicially known." 1 Chamb. Mod. Ev., vol. 1, sec. 729.
"The process of X-Ray photography is now as well established as a recognized method of securing a reliable representation of the bones of the human body, although they are hidden from direct view by the surrounding flesh, and of metallic or other solid substances which may be imbedded in the flesh, as was photography as a means of securing a representation of things which might be directly observed by (674) the unaided eye at the time when photography was first given judicial sanction as a means of disclosing facts of observation, and for that purpose X-Ray photographs, or sciagraphs, or radiographs, as they are variously called, have been held admissible on the same basis as photographs. Bruce v. Beall, 99 Tenn. 303, 41 S.W. Rep., 445; Miller v.Dumon, 24 Wash., 648, 64 Pac. Rep., 804; Chicago, etc., Electric Co. v.Spence, 213 Ill. 220, 72 N.C. Rep., 796; Carlson v. Benton, 66 Neb. 486, 1 Am. Cas., 159, 92 N.W. Rep., 600; Geneva v. Burnett, 65 Neb. 464,91 N.W. Rep., 275; 1 Wigmore Evidence, paragraphs 795-797. As is said inMauch v. Hartford, 112 Wis. 40, 87 N.W. Rep., 816: `It is the duty of courts to use every means for discovering the truth reasonably calculated to aid in that regard. In the performance of that duty every new discovery, when it shall have passed beyond the experimental stage, must necessarily be treated as a new aid in the administration of justice in the field covered by it. In that view, courts have shown no hesitation, in proper cases, in availing themselves of the art of photography by the X-Ray process.'" S. v. Matheson, 130 Iowa 440.
This case is also reported in 8 A. and E. Ann. Cases, and the editor states his conclusion, in the note on page 435, to be: "There seems to be no doubt of the admissibility of X-Ray photographs in evidence upon a proper occasion. It is now a recognized fact that by the aid of proper apparatus a picture of the framework of the human body may be obtained that will more or less sharply define the skeleton and any foreign substance that may be lodged in the body. Therefore X-Ray photographs are admissible in evidence when proper proof of their accuracy and correctness is produced. Miller v. Mintum, 73 Ark. 183, 83 S.W. Rep., 918; Chicago,etc., Electric R. Co. v. Spence, 213 Ill. 220, 72 N.E. Rep., 796; Jamesonv. Weld, 93 Me. 345, 45 Alt. Rep., 299; De Forge *Page 762 v. New York, etc., R. Co., 178 Mass. 59, 59 N.E. Rep., 669; Carlson v.Benton, 66 Neb. 486; 1 Ann. Cas., 159, 92 N.W. Rep., 600; Bruce v. Beall,99 Tenn. 303, 41 S.W. Rep., 445. See, also, Frazer v. California St.Cable R. Co., 146 Cal. 714, 81 Pac. Rep., 29; Sias v. ConsolidatedLighting Co., 73 Vt. 35, 50 Alt. Rep." Carlson v. Benton, 66 Neb. 486;Bruce v. Beall, 99 Tenn. 303, and other cases cited in the note to the quotation from Cyclopedia of Law, support the text.
There was also no error in permitting the jury to see the plates. The rule, based on want of confidence in the intelligence of jurors, formerly prevailed that jurors might hear but could not see, but it has been expressly repudiated in this State. Martin v. Knight, 147 N.C. 578;Nicholson v. Lumber Co., 156 N.C. 59.
In the first of these cases Justice Connor, discussing the propriety of permitting a jury to see a paper whose genuineness was in (675) controversy, says: "The purpose of the evidence is to aid the jury. Why convey information through the sense of hearing and exclude the sense of seeing? Can it be doubted for a moment that they would receive a clearer, more intelligent view of the matter in controversy if permitted to have the explanation made with the aid of their sight? We know from experience that arguments in this Court are illuminated and our apprehension of the matter in controversy made clearer by maps in cases involving the management of machinery or the situation of parties. It was supposed in the past that the average juror was not sufficient intelligent — educated — to comprehend the fine shades of difference in handwriting. Whatever may be thought of the soundness of the reason in the past, it is manifest that it has but little force at this time. As education and intelligence have increased and the methods of illustration improved, the capacity of the `average man' to write and pass upon the handwriting of others has advanced."
It is true that the witness who made the X-Ray photographs does not say, in so many words, that the photograph is an accurate and true representation of the condition of the foot, but this is a reasonable inference from his evidence. He had sworn that he would tell the truth; he was an expert and experienced in the manipulation of the X-Ray, and his whole evidence shows that he believed the photographs to be a true representation of the condition of the foot.
His Honor did not, at any time, tell the jury, as contended by the defendant, that the defendant admitted negligence, and if he erroneously stated that counsel for the defendant admitted in the argument that the plaintiff was struck by the truck, it was the duty of counsel to correct his error. La Roque v. Kennedy, 156 N.C. 372.
All the evidence for plaintiff and defendant showed that the plaintiff was injured, by the truck, and the question in controversy was how the *Page 763 
injury occurred, and this was submitted to the jury under proper instructions, which stated fully the contentions of the defendant.
There are other exceptions to the charge which need not be considered separately. They consist principally of objections to statements of contentions of the parties, which arose upon the evidence, and to single expressions taken from a paragraph, which are free from criticism when considered in connection with the context. We would not approve the expression that adequate compensation cannot be awarded for physical pain and mental suffering, standing alone, but the whole charge shows that his Honor was indicating the difficulty of fixing a money value for physical pain and mental suffering, which all admit, and that he instructed the jury that no damages could be awarded as punishment, and only a just compensation based on the evidence.
Several exceptions are to charges favorable to the defendant.
The motion for judgment of nonsuit is not discussed in the (676) brief and need not be considered, except to say that the evidence in the record was sufficient, if believed, to establish the negligence of the defendant and damage to the plaintiff as the proximate result thereof.
We find no error upon the trial.
No error.