ARKANSAS MIDLAND RAILWAY COMPANY *v.* GRIFFITH.

Opinion delivered February 27, 1897.

OPINION EVIDENCE—VALUE OF SERVICES.—Plaintiff in an action for personal injuries may testify as to the value of his services as a farmer, without showing that he or any one else within his knowledge has ever hired farm labor, where he states the amount necessary to make a living for himself, implying that he has made a living.

EVIDENCE—MORTALITY TABLES.—In an action to recover for a permanent personal injury, it is not error to admit the mortality tables in evidence to prove plaintiff's expectancy of life, although his condition and health are below the average, and he is not an insurable risk, where the jury are instructed to consider the tables as qualified by the evidence as to plaintiff's physical condition.

CARRIER—PRESUMPTION AS TO NEGLIGENCE.—An instruction that "when a passenger being carried on a train is injured without fault on his part, the law presumes that there was negligence on the part of the carrier, and the carrier must remove the presumption by evidence," though it is too broad, is not prejudicial where the injury occurred by reason of a broken rail and a defective cross tie, which derailed the train.

SAME—REBUTTING PRESUMPTION OF NEGLIGENCE.—To rebut the presumption of negligence on the part of a carrier arising from an injury to a passenger in an accident caused by a broken rail and a defective cross tie, the carrier must show that it had exercised the proper degree of care to discover the defect, and to remedy it when discovered, and it is not sufficient to show that it did not know of the defect.

SAME—PASSENGER ON FREIGHT TRAIN.—The common law rule is that one who boards a freight train is not entitled to the rights of a passenger, notwithstanding any conduct of the conductor towards him, unless the railroad company has by its conduct led the public to believe that passengers will be carried on such trains for hire or otherwise. But, under the statute providing that local freight trains shall carry passengers (Sand. & H. Dig. § 6284), one who boards a freight train with the consent of the conductor and pays his fare to him has a right to presume that the train is a local one.

Appeal from Prairie Circuit Court, Southern District.

JAMES S. THOMAS, Judge.

*J. J. & E. C. Hornor* for appellants.

1.   The court should have excluded the testimony of appellee as to the value of his services. He was not an expert, and if he was no foundation was laid. 34 Am. & Eng. R. Cas. 424; 27 *id*. 307. Appellee was not insurable, and the tables of life expectancy were inadmissible. The second and third instructions for appellee are erroneous in this: The jury is authorized to find negligence by reason of any break in the rail, or defect in the tie, without regard to the place on the track where the defect existed, or without regard to the fact whether these defects were sufficient to cause the derailment. 52 Ark. 524. While the law demands the utmost care for the safety of passengers, it does not require the company to exercise all the care, skill and diligence of which the human mind can conceive. Under the fourth instruction, appellant was required, at all hazards and events, to keep its track in repair, without qualification. This was error. It was error to charge the jury that the tables of mortality could be considered in determining the duration of the injury and the disability of plaintiff. Patterson, Ry. Acc. Law, p. 371. Appellee was not a passenger. The train was a freight train, and the burden was on appellee to establish the fact that appellant consented to receive appellee as a passenger. No custom of carrying passengers were shown. 57 N. Y. 387; Patterson, Railway Accident Law, sec. 215; Thomas on Neg. p. 219; 58 Am. & Eng. R. Cas. 9.

*J. H. Harrod* for appellee.

No foundation was necessary for Griffith's testimony. He testified that he was a farmer by occupation, and it was proper to show what his time was worth. Equally untenable is the objection to the life tables. A

mere admission of incompetent testimony will not reverse a judgment which is right on the whole record. 44 Ark. 556; 43 *id.* 219. The instructions are in the main questions which have been settled by this court. The first and second by 34 Ark. 613; the third is approved in 56 Ark. 600; the others are elementary law. The verdict is not excessive. 83 Ky. 675.

BUNN, C. J. This is an action for damages for personal injuries received by plaintiff and appellee while a passenger on one of defendant's and appellant's trains, and by reason of the negligence of the latter.

The venue was changed on the application of plaintiff from the Monroe circuit court to the circuit court of the southern district of Prairie county. Trial and judgment against defendant for $3,000.80, substantially the amount claimed, and defendant appealed to this court.

The motion for a new trial contains ten several grounds, upon each of which appellant claims the case should be reversed, and is as follows, viz. (omitting the first three which are in the usual form): " (4) Because the damages assessed by the jury are excessive in amount and not warranted by the testimony. (5) Because the court erred in overruling the motion of the appellant to exclude from the jury the testimony of the appellee as to the value of his services, said motion having been made before said plaintiff left the witness stand, and no foundation was laid for the the introduction of the testimony, and the same as given by said appellee was incompetent, irrelevant and inadmissible. (6) Because the court erred in permitting the appellee to read, as evidence to the jury, tables of mortality, showing that the expectancy of one aged 62 years is seven years, the proof in this cause having disclosed that the plaintiff was, at the time of the accident, a man of feeble health and his physical condition below the average. (7) Because the

court erred in overruling the motion of the appellant to exclude from the consideration of the jury said tables of mortality, the testimony of Dr. P. E. Thomas having disclosed that at the time of the accident appellee was not in such physical condition as to render him an insurable risk.   (8) Because the court erred in instructing the jury, on motion of appellee and against the objection of appellant, as follows :   (Here follow six several instructions given by the court at the instance of appellee and over the objections of appellant).   (9) Because the court erred in refusing to instruct the jury, on motion of appellant, as follows :   'If the jury find from the testimony that the plaintiff is such a man as, from his physical condition, would not be insurable, then they will disregard any evidence as to the probable duration of his life obtained from the tables of mortality introduced in evidence.'   (10) Because the court, on its own motion and against the objection of appellant, gave to the jury the following instruction :   'In determining the duration of the injury and disability of the plaintiff, if you find that he has sustained such, you may take into consideration the expectancy of his life, as shown by the tables introduced, when considered in connection with the evidence as to his physical condition at the time of the injury and the other evidence in the case.' "

First, then, we are of opinion that there was evidence sufficient to warrant the verdict of the jury, and the same does not appear to be contrary to the law as given by the court to the jury.   As to the fourth ground, if damages were recoverable at all, we have no sufficient evidence to justify us in reversing the judgment because the amount assessed is excessive, or to direct a remittitur to be entered.

Admissibility of opinion evidence.   The fifth ground is that the court should have excluded plaintiff's testimony, in so far as it shows the value of his annual services as a farmer, because his

testimony is only his opinion as to such services and their value, and he was not shown to be an expert, whose opinion alone can be taken and given in evidence in such matters. The argument of appellant's counsel on this objection is that the testimony fails utterly "to show that appellant had ever hired a laborer to do farm work, or that any one else within his knowledge had ever hired farm labor. He could, therefore, be a farmer without being able to testify as to the cost of the services of other persons engaged in farming pursuits, such as he was engaged in, at that time and place." In answer to this, it may be said that the plaintiff was not called upon to make proof of the value of the services of a farm laborer or laborers (although, as the work of a farm laborer may be, and frequently is, a part of a farmer's work, to that extent, and no further, a farmer's knowledge of the value of a farm laborer's services may help him in putting a value upon his own), but the sole question to be settled by the testimony was what his services as a farmer—not a farm laborer—were annually worth. If, in order to make this kind of proof, it is essential to show instances wherein persons had been hired as farmers, or wherein a value had been actually placed upon a *farmer's* services, it would be rarely the case that the object of the inquiry could be attained, since the instances are rare where such services have been valued, so as to make this valuation of general application. When the plaintiff (as showing his method of arriving at the value of his services annually) testified that it required about $300 for him to make a living, implying that he made a living for himself and those dependent upon him, he exhibited a practicable method of calculation far above and far more accurate than any the mere theorists have been able to discover.

The opinion of a non-expert witness is admissible in evidence as to matter of common knowledge among

people of his particular calling or vocation. It is proper for such witness also to state the facts upon which his opinion is founded, in order that the jury may be aided in determining as to the correctness of his conclusions. *Railway Co.* v. *Lyman*, 57 Ark. 519; *Phillips* v. *Terry*, 5 Abb. Prac. (N. S.) 327.

We think the fact stated by witness in this case, that it took $300 to make a living for himself, followed by the natural inference that he made a living, was sufficient to warrant his opinion on the subject. Moreover, as said by the court in *Clark* v. *Baird*, 9 N. Y. (5 Selden), 183: "The facts on which such an opinion is based, like those on which the value of a given article of property depends, are of such a character as not to be capable of being transferred to the minds of a jury so completely and intelligibly as to enable them to form a definite determination for themselves." In the same opinion it is also said that "a person conversant with the growth of grass, and accustomed to compare its appearance, in different stages of such growth, with its ultimate yield to the acre, may well be said to have such knowledge of that subject as to make him competent to testify how much, in his opinion, a given piece examined by him will yield per acre."

Mortality tables as evidence. · The objection that the court erred in permitting the tables of mortality to be read in evidence, and in refusing to instruct the jury, as asked by defendant, as to the physical condition of the plaintiff at the time of the injury (shown to be below the average), we think was not tenable. The tables contain, by common consent, the most accurate estimate of the probable duration of human life under given conditions and when the subject is in reasonable good health—denominated the condition and health of the average. The question is whether we can still make the tables of service in making the calculation, notwithstanding it is shown that

plaintiff's condition and health were below the average, and that, in fact, he was not an insurable risk. This is an element of uncertainty that must necessarily be found in the case of one of feeble health and not insurable, in all cases, whether we call to our aid the mortality tables or not. When we do so, however, when, by reason of enfeebled physical condition, the standard tables are not strictly applicable on that account, yet they are more or less efficient aids in arriving at an approximation of the truth, and that is the best that can be hoped for after all.

The ground sought to be covered by the refused instruction, we think, was fairly covered by the instruction given on the court's own motion, by which, in effect, the court told the jury to take the calculations of the tables, but only as qualified by the evidence as to the physical condition of the plaintiff and all the other evidence in the case bearing on the subject.

This disposes of the objections made in the motion for a new trial down to the eighth, and thus leaves the eighth to be disposed of, but which, on account of its peculiar wording, involves the first six of the instructions given at the instance of the appellee over the objection of the appellant.

It is undoubtedly true that, viewed abstractly, the first of these instructions is erroneous, for it cannot be maintained as an abstract proposition that "when a passenger, being carried on a train, is injured without fault on his part, the law presumes that there was negligence on the part of the carrier, and the carrier must remove the presumption by evidence;" because the injury may proceed from something entirely disconnected from the condition or operation of the road and trains,—something over which the carrier has no control. But, considered as applying to the facts of this case, we see no error in it, because, there having been a derailment by

Presumption as to negligence.

reason of a broken rail, and *that* occurring by reason of a defective cross tie, producing a state of things from which plaintiff received his injury, while a passenger on one of the cars so derailed, the presumption of negligence did arise as stated in that and the third of these instructions; nor is it a sufficient defense, as said in the third one, to show that defendant did not know of the defect. The company must show that it had exercised the proper degree of care to discover the defect, and of course to remedy it when discovered, and thus prevent the accident as far as possible.

How pre-
sumption
rebutted.

The fourth instruction, given at the instance of the appellee, is objected to because, as it is claimed, the word "neglect" therein used has the meaning of "failure" in the connection in which it is used, and because, if the word "failure" were used instead of the word "neglect," the instruction would be erroneous. The proposition last stated is true, but, using the word "neglect" as the court did, the instruction is a proper one.

Rights of
passenger
on freight
train.

The contention that plaintiff was not a passenger on the train, the same not being a passenger train, and that, being on a train not designed for the carriage of passengers, he was there without right, and that the conductor's receiving his fare did not make the company liable to him as a passenger for any injury he might receive, gives more serious concern than any of the others. The common-law rule, or, rather, the rule unaffected by statute, is, or seems to be, that one boarding a freight train cannot claim to be a passenger, notwithstanding any conduct of the conductor towards him, unless the company has by its management led the public to believe that passengers will be carried on such trains for hire or otherwise, and the company has not made it otherwise liable to him as a passenger. The following authorities cited by appellant's counsel are in point: Patterson, Railway Accident Law, § 215; Thomas on Negligence,

page 219; *Atchison & T. R. Co.* v. *Headland*, 58 Am. & Eng. R. Cases, 4. But our statute on the subject of local freight trains somewhat changes the rule on the subject. It is contained in Sand. & H. Digest, section numbered 6284, and is as follows: "Local freight trains on all railroads or railways in this state shall carry passengers from and to any and all of their stations." What kind of freight train, whether local or through freight, the train in this case was, is not shown; but it is shown to have been a freight train, and not a passenger train, and, in the absence of a statute on the subject, it may be that plaintiff could not have been considered as properly on the train,—that is, that he was not a passenger,—for it was easy for him to determine that the train was a freight, and not a train designed for carrying passengers. But since the state compels the company to carry passengers on one of its two kinds of freight trains, and since these are not easily distinguishable by persons unacquainted with the workings of railroads and trains, it is but just to presume that the persons in charge of these trains are clothed with authority and rest under the duty to designate, to such as apply for passage, whether or not a particular train will carry passengers, and that in this the conductor acts for and as the agent of the company; for the convenience of the public is the great end in view, and this cannot be secured without some method of giving essential information to persons interested. The conductor therefore having permitted plaintiff to board the train, and having received his fare, the plaintiff had a right to presume that the train was a local feight,—one which the law compels to carry passengers.

This disposes of all the questions we deem it necessary to discuss. The court gave all the instructions, except one, asked by the appellant, and, we think, upon

the whole, the case was fairly submitted to the jury, both as to the negligence of appellant and contributory negligence of the appellee, and the damages to be assessed, and whether or not they should be assured, as well as on all other matters suggested.

The judgment is therefore affirmed.