MOULTON et al., Respondents, v. GLOBE MUTUAL INSUR-
ANCE COMPANY, Appellant.

(154 N. W. 830.)

(File No. 3685.   Opinion filed November 19, 1915.    Rehearing denied
January 6, 1916)

1. **Insurance—Cyclone Insurance—Payment to Mortgagee, on Trial,
Effect, as to Owner's Right to Subrogation—Effect, as to Dis-
missal of Action.**

In a suit by owner and a mortgagee of property insured
against damage by windstorm, the mortgagee plaintiff, at con-
clusion of the evidence and before case went to jury, admitted
in open court payment of the mortgage, and consented that
any verdict or judgment rendered might be for plaintiff owner
alone, and expressly waived its rights under the mortgage
clause attached to the policy, or any rights acquired by virtue
of the suit; this being, in legal effect, a dismissal, on the mer-
its, of the action of the mortgagee.  Held, that the trial court's
instruction to the jury that any verdict returned for plaintiff
must be for the plaintiff owner alone was not erroneous, as
contended by defendant insurance company, on the ground
that the mortgagee's dismissal deprived defendant of its right,
under the policy, to be subrogated to the rights of the mort-
gagee; since the policy provided that where the owner shall
have done any act voiding the policy, or the policy shall have
been canceled, so that the insurer is not liable to him in any
event, the mortgagee, on payment to him of the amount due him,
shall assign to insurance company making such payment, the
mortgage and the note secured thereby; and this clause must
be construed with another policy clause that no act or default
of any person, other than such mortgagee or his agents or
those claiming under him, shall affect the mortgagee's right
to recover in case of loss, the plain import of these provisions
being that when a mortgagee is permitted to recover on a pol-
icy which has become void as to owner of the property, by
cancellation, or the doing of any act voiding the policy, the
insurer, on payment of amount secured by mortgage, is en-
titled to an assignment of mortgage and mortgage debt, but,
held, further, that none of those conditions exist in the instant
case; the insurer never became entitled to an assignment of
the mortgage, hence could not have been prejudiced by dis-
continuance of the suit by mortgagee.

2.  **Evidence—Photographs—Foundation for Introduction of, Essentials.**

    The trial court did not err in admitting in evidence photographs of a barn destroyed by a storm, some taken before, some after its destruction, upon the foundation of the owner's testimony that he was present when they were taken, that two of them were taken shortly after the storm and on that day, that the barn ruins were in same condition when the photographs were taken that they were immediately after the storm, that the photographs correctly represented condition of barn right after the storm, that he was familiar with the barn, and from examination of the photograph of the barn before its destruction knew it to be a correct photograph thereof, that the condition of the barn just prior to the storm was the same as when the photograph was taken; it being unnecessary that witness thus testifying shall have made the photographs himself, it being only essential that he be qualified by observation to speak of the matters so represented, and that he affirm them to correctly represent his observations.

3.  **Evidence—Value—Value of Barn—Original Cost—Foundation for Testimony, Rule Concerning.**

    In a suit on a policy of cyclone insurance for damages for destruction of a barn, the testimony of a witness as to what the barn was worth, after testifying by way of foundation, that he had had experience in building barns and farm buildings, had seen and been in this barn before the storm, had constructed similar barns, was familiar with prices of lumber and material, including hardware, etc., and price of carpenter work, and cost of transportation thereof to the farm, and that from his experience he could state approximately the value of the barn before the storm, was admissible.

4.  **Evidence—Value of Barn—Cost of Material—Owner's Testimony —Rule of Evidence.**

    In a suit to recover on a policy of cyclone insurance, held, that testimony of the owner tending to show original cost of the materials entering into its construction was competent; since an owner should be allowed to put in evidence on the issue of the value of property, all facts which a vendor would adduce in attempting a private sale.

5.  **Insurance—Recovery for Injury—Measure of Damages, Methods of Estimating.**

    There are two methods of estimating damages in suits for recovery on policies of cyclone insurance: First, by estimating cost of replacing the building, less depreciation from use, age, or otherwise; second, by evidence of value of building at time of its destruction, less value, if any, of the ruins.

6.   **Evidence—Value of Building—Competent Witness, Qualifications.**
    Any person acquainted with property and its value, or the
    value of like property, is a competent witness to prove its
    value, the weight of his testimony being left for jury to es-
    timate.

7.   **Insurance—Insurable Interest—Owner's Contract of Sale, Can-
    cellation of, Effect as to Duration of Interest.**
    Under Civ. Code, Sec. 1802, providing that every interest in
    property, or any relation thereto, or liability in respect thereof,
    . of such nature that a contemplated peril might directly demnify
    insured, is an insurable interest, and Sec. 1808, providing that
    an interest insured must exist when insurance takes effect, and
    when loss occurs, but need not exist in the meantime, and Sec.
    1809, declaring that a change of interest in any part of the
    thing insured unaccompanied by a corresponding change of in-
    interest in the insurance, suspends the insurance to an equiva-
    lent extent, until the interest in the thing and the interest in
    the insurance are vested in the same person, **held,** that where
    the owner of a barn insured against injury by cyclone con-
    tracted to sell, he did not thereby deprive himself of an insur-
    able interest therein; and, it appearing that such contract was
    canceled, and the original returned to owner before destruction
    of the building, such change of interest through said contract
    would, at most, merely suspend the insurance until such time
    as insured became reinvested with the entire estate.
        Whiting, J., concurring in the result.

Appeal from Circuit Court, Faulk County.   Hon. JOSEPH H.
BOTTUM, Judge.

Action by William L. Moulton and J. D. Newcomer Com-
pany, against the Globe Mutual Insurance Company, to recover
damages under a policy of cyclone insurance.   From a judgment
for plaintiff, and from an order denying a new trial, defendant
appeals.   Judgment and order affirmed.

*Null & Royhl,* for Appellant.

*Corrigan & Jackson,* for Respondents.

(2)   To point two of the opinion, Appellant cited:   In re
McClennan's Estate, 20 S. D. 509; Higgs v. Ry. Co. (N. D.) 15
L. R. A. (N. S.) 1162; Dedericks v. Ry. Co., 35 L. R. A. 802.

(3)   To point three of the opinion, Appellant cited: 30 L. R.
A. (N. S.) 367; 6 L. R. A. 454.

(7)   To point seven of the opinion, Appellant cited: Davison
v. Hawkeye Ins. Co., (Iowa) 32 N. W. 514; Hamilton v. Ins.
Co.,(Mich.) 57 N. W. 735; Johannas v. Ins. Co. (Wis.) 35 N.

W. 298; Davison v. Ins. Co., 32 N. W. 514; Duprean v. Ins. Co., 43N. W. 585; Golden v. Ins. Co., 49 N. W. 246; Grunauer v. Ins. Co., 62 Atl. 418; Ordway v. Chace, 42 Atl. 149; Martin v. Ins. Co., (N. J.) 43 Am. Rep. 397; Lawver v. Globe Ins. Co., 25 S. D. 576; 1 May on Insurance (4th Ed.) 578, and citations.

SMITH, J. Action on an insurance policy, to recover the value of a barn damaged by windstorm. The policy is the standard form of fire insurance policy of 1905, with a rider attached which makes the policy in the form thus used a tornado, cyclone, and windstorm insurance policy, and makes the terms of the fire insurance policy applicable to the tornado insurance, "in so far as the difference in conditions between them may apply." The provisions of the policy, so far as material to this appeal, are as follows:

"This policy shall be void  *  *  *  if without such assent the situation or conditions affecting the insured property shall be altered so as to materially increase the hazard, if such increase in hazard be occasioned by the act or agency of the insured, or if without such assent the insured shall sell and dispose of all insurable interests in the insured property.  *  *  *"

Attached to this policy was a mortgage clause making the loss, if any, payable to J. D. Newcomer Co. or assigns, mortgagee (or trustee), as his interest may appear. The policy further provides that:

"If this policy shall be made payable to the mortgagee or trustee of the insured real estate, no act or default of any person other than such mortgagee or his agents or those claiming under him, shall affect such mortgagee or trustee's rights to recover in case of loss of such real estate  *  *  *  and in case this policy shall have been issued to the owner of the insured property with the loss payable to a mortgagee, and the owner shall have done any act voiding the policy as herein provided, or the policy shall have been canceled so that the company is not liable to him in any event, then the mortgagee upon payment to him of the full amount secured by such mortgage shall assign to the company or companies making such payment, the mortgage, together with the note or debt secured thereby.  *  *  *  Any person who solicits insurance or issues policies of insurance or procures applications therefor, shall be held to be and considered the general agent of

the insurer issuing the policy or making a renewal thereof, except as to proof of loss and adjustment thereof.  *  *  *"

The policy further provides that:

"It shall be the duty of the insurer in order to avail himself of any provision in this policy rendering it void, to promptly cancel the policy as provided herein, upon having or obtaining notice or knowledge of the existence of any facts or circumstances which would, according to the terms of the policy, render it void; otherwise it will be deemed to have waived such provision or provisions voiding the policy."

The answer alleges that after the issuance of the policy, and without the knowledge or assent of the defendant, the plaintiff Wm. L. Moulton entered into a contract in writing with C. H. and L. L. Rowley, whereby he covenanted and agreed that, on payment of certain sums at times therein specified, he would convey and sell to them certain lands, including the premises described in the policy; that at the time of the execution of said contract, the Rowleys paid the sum of about $1,500, on the purchase price, and made further payments about May and October of that year, aggregating some $4,500; that upon the execution of said written agreement, the plaintiff delivered possession of all the lands and premises, including that described in the policy of insurance, to the vendees, who retained possession thereof, up to and including the time when the barn described in the complaint was damaged in a windstorm, on or about July 8, 1912; that after the execution and delivery of said contract, and the delivery of possession of said premises, the plaintiff presented said policy to the defendant, and requested it to attach thereto the mortgage clause wherein the loss, if any, was made payable to the plaintiff J. D. Newcomer Company, and that upon such request, and without any knowledge on the part of the defendant, of the sale of said lands, and without any assent thereto, the defendant, believing the said plaintiff to be the full and true owner and in possession of said lands, at the request of plaintiff, indorsed and attached to said policy the said mortgage clause.  The defendant further alleges that by reason of the written agreement for the sale of said lands, and the transfer of possession thereof, the policy of insurance became void, and the defendant not liable for the amount of loss claimed for damages to said barn; that the

plaintiff, when said loss occurred was not the sole, absolute, and exclusive owner of the lands upon which the barn was situated, but fraudulently made proofs of loss with intent to collect the insurance under said policy for the use and benefit of the Rowleys; that by reason of the written agreement of sale, the situation or conditions affecting the insurance policy, without the assent of the defendant, were so altered as to materially increase the hazard, and the policy thereby became and was void at the time of the loss. The answer further demands that, in case it be determined that the mortgage clause is valid, and the defendant be held liable to plaintiff J. D. Newcomer Company as mortgagee for the amount of loss sustained, the mortgagee be required to assign its mortgage to the defendant, according to the terms of the policy.

[1] At the conclusion of the evidence, and before the case was submitted to the jury, the plaintiff J. D. Newcomer Company, in open court, admitted payment of the mortgage given by Moulton, and consented that any verdict or judgment rendered in the case might be for the plaintiff Moulton alone, and expressly waived any rights under the mortgage clause attached to the policy, or any rights acquired by virtue of the suit. This was, in legal effect, a dismissal, on the merits, of the action of J. D. Newcomer Company, and the court instructed the jury that any verdict returned for plaintiff must be for Wm. L. Moulton alone. Appellant assigns this as error, insisting that a dismissal of the action by the mortgagee deprived the defendant of its right, under the policy of insurance, to be subrogated to the rights of the mortgagee. This contention is without merit. The policy provides that where the owner of the property shall have done any act voiding the policy, or the policy shall have been canceled so that the company is not liable to him in any event, the mortgagee, upon payment to him of the full amount secured by the mortgage, shall assign to the company making such payment the mortgage, together with the note or debt secured thereby. This clause of the policy must be construed in connection with another clause, which provides that no act or default of any person, other than such mortgagee or his agents or those claiming under him, shall affect such mortgagee's or trustee's rights to recover in case of loss. The plain import of these provisions is that when a mortgagee is permitted to recover upon a policy of insurance which has become

void as to the owner of the property by cancellation, or the doing of any act voiding the policy, the insurer, upon payment of the full amount secured by the mortgage, shall be entitled to an assignment of the mortgage and the indebtedness secured thereby. None of these conditions exist in this case. The insurer never became entitled to an assignment of the mortgage, and therefore could not have been prejudiced by a discontinuance of the action by the mortgagee.

[2] At the trial, photographs of the barn injured by the storm, taken before and after the destruction of the building, were received in evidence, over defendant's objection that no proper foundation had been laid. These rulings are assigned as error. Prior to the offering of these photographs in evidence, and as a foundation therefor, plaintiff Moulton testified that he was present when the photographs were taken; that two of the photographs, Exhibits H and I, were taken shortly after the storm, and on the same day; that the ruins of the barn were in the same condition at the time the photographs were taken that they were immediately after the storm, and that the photographs were correct representations of the condition of the building right after the storm; that he was present when the photograph Exhibit. G was taken; that he was familiar with the barn, and from an examination of the photograph knew it to be a correct photograph of the barn, as it stood before the storm; that the barn was in the same condition just prior to the windstorm as when the photograph was taken; that there were no changes after the photograph and before the windstorm; that it was in exactly the same condition, except there was a coat of paint on it. It is not necessary that the witness thus testifying shall have made the photograph himself. It is only essential that he be qualified by observation to speak of the matters represented in the photographs, and that he affirm them to correctly represent his observations. This is the essential element. There was no error in the rulings of the trial court. Wigmore on Evidence, § 704; Jones on Evidence (2d Ed.) 411; Mauch v. Hartford, 112 Wis. 40, 87 N. W. 816; Carlson v. Benton, 66 Neb. 486, 92 N. W. 600, 1 Ann. Cas. 159; State v. Miller, 43 Or. 325, 74 Pac. 658; Sterling v. City of Detroit, 134 Mich. 22, 95 N. W. 986; Dedrichs v. S. St. M. Ry. Co., 14 Utah, 137, 46

Pac. 656, 35 L. R. A. 802; Wyldes v. Patterson (N. D.) 153 N. W. 630.

[3, 4] At the trial one Rowley, called as a witness to prove the value of the barn, testified that he had had some experience in building barns and farm buildings; that he had seen and been in the barn before the windstorm; that he had constructed barns similar to this, but not as large; that he was familiar with the price of lumber and materials and the price of carpenter work, and the cost of transportation of lumber and material to the Moulton farm; that he was familiar with the price of hardware, nails, hinges, and that sort of thing; that from his experience he could state approximately what the barn was worth before the storm. He was then asked what a barn of this kind was worth, in July, 1912, and was permitted to testify, over defendant's objections, that the barn was worth approximately $2,000.

Appellant also excepted to testimony of the plaintiff Moulton, tending to show the original cost of the various articles and materials of which the barn was constructed. There was no error in either of these rulings. It has been held that an owner should be allowed to put in evidence all facts which a vendor would adduce if he were attempting a private sale. Ark. Midland R. Co. v. Griffith, 63 Ark. 491, 39 S. W. 550; Little Rock Junc. R. C. v. Woodruff, 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51.

[5] There are two methods of estimating damages in cases of this sort: First, by estimating the cost of replacing the building, less any depreciation from use, age, or otherwise; second, by evidence of the value of the building at the time of its destruction, less the value, if any, of the ruins. Elliott on Evidence, § 2315. The latter seems to have been the method adopted in this case. The defendant requested the trial court to submit two special interrogatories to the jury: First. "What was the cash value of the barn immediately before the loss? In answer, the jury fixed the value at $2,100. The second interrogatory: "What, if anything, was the salvage value of the barn after the loss?" to which the jury answered, $325. The evidence shows that the barn was built about four years prior to the loss, and while its original cost was not necessarily the value of the barn at the time of the loss, it seems to be held that evidence of the cost and of

the age and condition of the building is competent upon the question of the value at the time of the loss.

"The measure of damages in an action for such a loss is the value at the time of the loss; and, to arrive at that, the original cost, the cost of a like building at the time of the trial, and the difference in value between the house burned and a new one by reason of age and use are all proper subjects of inquiry." Elliott on Evidence, § 2317; Holter Lumber Co. v. F. F. Ins. Co., 18 Mont. 282, 45 Pac. 207.

See, also, Porter v. Hawkins, 27 Mont. 486, 71 Pac. 664; Atchison, T. & S. F. R. Co. v. Huitt, 1 Kan. App. 781, 41 Pac. 1049.

[6] Appellant's contention that Moulton and Rowley were not qualified to testify as to the value of the barn is without merit. In Lycoming Fire Ins. Co. v. Jackson, 83 Ill. 302, 25 Am. Rep. 386, it is said:

"Our reports are full of cases which hold that any person acquainted with property and its value, or the value of like property, is a competent witness to prove its worth; and, if competent, and he testifies, it is for the jury to estimate the value of his testimony as they do that of other witnesses."

[7] Appellant further contends that by the written contract of sale, plaintiff Moulton was divested of all insurable interest in the property. Appellant is wrong in this contention. Section 1802 of the Civil Code provides:

"Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest."

It has been many times held that a vendor in a contract for sale of real property, where no conveyance has been made, and only part of the purchase money paid, has an insurable interest in the property included in the contract. Cooley, Briefs on the Law of Insurance, vol. 1, p. 188 (8 A.), and cases there cited.

Appellant further contends that by reason of the contract of sale and the vendee's possession thereunder the situation or conditions affecting the insured property were so altered as to materially increase the hazard, and avoid the policy. Respondent contends, and we think with much reason, that neither the contract of sale nor change of possession thereunder could affect the

situation or condition of the insured property so as to materially increase the hazard of windstorms. In the view we take of this case, however, we find it unnecessary to decide that question.

The undisputed evidence of at least one witness, wholly disinterested so far as the record shows, discloses that the contract of sale between Moulton and the Rowleys was canceled in October, 1911, and the original contract returned to Moulton. It also appears that during the year 1912, Moulton was in possession of the premises and paid the taxes and the interest accruing during that year on the J. D. Newcomer mortgage. The issues as to an avoidance of the policy by the sale, and a waiver of the forfeiture by reason of the knowledge of the sale by Brewer, the alleged agent of the defendant, thus became wholly immaterial, and the instructions given by the court as to those issues, if erroneous, did not prejudice the legal rights of the appellant, even if the contract for a sale of the premises and the change of possession would avoid the policy, a question we do not decide. Such a change of interest would, at most, merely suspend the insurance until such time as the insured became reinvested with the entire estate. It is unnecessary to review the numerous decisions which sustain this view, because the question is settled by our statute.

Section 1808, Civ. Code, provides:

"An interest insured must exist when the insurance takes effect, and when the loss occurs, but need not exist in the meantime."

Section 1809, Civ. Code, also declares that, except in certain cases named:

"A change of interest in any part of the thing insured unaccompanied by a corresponding change of interest in the insurance, suspends the insurance to an equivalent extent, until the interest in the thing, and the interest in the insurance are vested in the same person."

Many courts have adopted the same rule, in the absence of a statute. State Ins. Co. v. Schreck, 27 Neb. 527, 43 N. W. 340, 6 L. R. A. 524, 20 Am. St. Rep. 696; Power v. Ocean Ins. Co., 19 La. 28, 36 Am. Dec. 665; Sumter v. Phœnix Ins. Co., 76 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736; Lane v. Maine Ins. Co., 12 Me. 44, 28 Am. Dec. 150.

We have carefully examined the entire record, and are satis-

fied the trial court committed no error which could have preju-
diced appellant's rights. The judgment and order are therefore
affirmed.

WHITING, J. I concur in the result. I prefer to base such
concurrence on the ground that there was ample evidence to war-
rant the jury in finding, and we must therefore presume it did
find, that defendant's general agent, Brewer, was fully advised as
to the existence of the contract between the plaintiff and the Row-
leys. The jury was clearly and fully instructed upon this point.