GREAT WESTERN LAND COMPANY *v.* BARKER.

Opinion delivered June 9, 1924.

1. MASTER AND SERVANT—ASSUMED RISK NO DEFENSE WHEN.—Where plaintiff and two fellow-servants were engaged in piling stumps, and, while they were attempting to lift a heavy stump, the fellow-servants without warning relaxed their hold, throwing the weight on plaintiff and resulting in the injuries complained of, the issue of assumed risk was not involved, and any error in submitting such issue was not prejudicial.

2. MASTER AND SERVANT—PERSONAL INJURY—EVIDENCE.—In an action by a servant to recover for personal injuries, testimony

that the injury affected plaintiff's digestion and water passage was competent and relevant to the nature of the injuries and the amount of damages sustained.

3. EVIDENCE—STATEMENT OF DEFENDANT'S PHYSICIAN.—It was not error to permit the plaintiff to testify that defendant's physician, who treated him, told him of what his injury consisted.

4. EVIDENCE—EXPERT TESTIMONY.—It was not error to permit medical experts to testify, after an examination of plaintiff, that he could not have been a malingerer.

5. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict on the issue of negligence is conclusive when sustained by substantial testimony.

Appeal from Clay Circuit Court, Eastern District; *W. W. Bandy,* Judge; affirmed.

*W. E. Spence,* for appellant.

Appellee had been employed in this kind of work at various times, and was acquainted with the nature of the work and the risks, if any, attending it. He assumed the risk, and the verdict should have been directed against him. 97 Ark. 486.

*Ward & Ward,* for appellee.

1. The evidence will be viewed in the light most favorable to the verdict, to ascertain if there was any legally sufficient evidence to sustain it, and every legitimate inference in favor of the verdict will be drawn, that is deducible from the evidence. 48 Ark. 495; 76 Ark. 399; 70 Ark. 512; 73 Ark. 377; 74 Ark. 478; 76 Ark. 115; *Id.* 326.

2. On the question of assumed risk, the case cited by appellant, 97 Ark. 486, is not applicable to the facts in this case at all. As to whether or not the injury was the direct result of the negligence of plaintiff's fellow-servants, was a question for the jury, as likewise the question of assumed risk. 156 Ark. 17; 138 Ark. 267; 129 Ark. 95. The same rule as to assumed risk applies in respect to fellow-servants as to masters, and the rule as to masters is that a servant, in entering the master's employ, does not assume the risk of the dangers and perils that arise from the negligence of the master. He has the

right to assume that the master has exercised due care and diligence, and to act on the presumption that the master has exercised, and will exercise, that care for his protection.   93 Ark. 88; 89 Ark. 424; 85 Ark. 503; 83 Ark. 396.

WOOD, J.   This action was instituted by the appellee against the appellant, a Missouri corporation, doing business in Arkansas, to recover damages for personal injuries.   The appellee alleged that he was in the employ of the appellant, engaged in piling and hauling stumps, loading and unloading same on and off ground-sleds; that, because of the negligence and failure of appellant to supply necessary help and loading and unloading facilities, appellee was injured; that the employees, engaged with the appellee in loading and unloading the stumps, permitted a stump to slip and break the hold of the appellee, and, by so doing, broke him down in the back, causing him severe injury, suffering, and medical bill, to his damage, as he alleged, in the sum of $2,900, for which he prayed judgment.   The appellant, in its answer, denied the allegations of the complaint, and set up that any injury received by the appellee was the result of a risk which he assumed when he entered appellant's employ.

The testimony of the appellee was to the effect that he was in the employ of the appellant in May, 1921.   He and his fellow-servants were hauling stumps on a ground-slide, piling them in heaps to be burned.   They had a pile of stumps three feet high, and got a stump to the pile, and started to put it on top of same.   The appellee was at the back end of the stump.   Two more fellow-servants were on each side of it.   They got the stump partly up, and appellee's fellow-servants turned loose to get a new hold, and, in doing so, let the weight of the stump fall back on the appellee, which injured him in his back and left hip.   He testified, over the objection of the appellant, that the injury had affected his digestion and water passage.   The appellee described his injuries in detail to the jury.   He testified that he had received

a slight injury before the one complained of in the small of the back, and did not present any claim for the same. He went back to work for the appellant as soon as he was well, and the company paid him for one-half of the time he had lost.

Physicians, who qualified as experts, testified on behalf of the appellee as to the nature of his injuries, and their testimony tended to show that he was injured as alleged in the complaint. One of them, Dr. F. E. Jones, testified that he saw the appellee in June or July of 1921, in connection with Dr. Joyner, and also had examined him a few days ago, at appellee's request. He described the injuries to appellee, but it is unnecessary to set forth his testimony as to the nature of these injuries. Over the objection of the appellant, he was permitted to testify, after describing the nature of appellee's injuries, that a normal man could not feign the condition testified to by the appellee. He could not become pale, sick at the stomach, and perspiration break out on him, without an injury.

A witness for the appellant testified that he was working with the appellee at the time of the alleged injury; that there was nothing extraordinary in the lift of the stump at that time; that they did not let go the stump at the time the appellee was injured. They each had hold of a part of the stump—had it about half-way up on the pile, when appellee said he was hurt, and let loose. After appellee let loose, the two fellow-servants of the appellee, who were assisting him, put the stump on the pile.

Physicians, who qualified as experts, testified on behalf of the appellant. One of them, Dr. Scott Cook, stated that he treated the appellee for the injury about May, 1921. He found a strain on the left hip—some soreness and tenderness. He did not find anything out of the way, aside from the history and symptoms of the case given him by the patient. Witness had an understanding with the appellant that he would look after minor injuries to its employees. Witness could not find

out what the trouble was with the appellee, and thought it was a case of malingering, and asked one of appellant's men to send the appellee to some one else, because he thought the appellee was exaggerating his symptoms and wanted to see if the other physician was of the same opinion.   When he sent the appellee away, he probably told him he was going to send him somewhere else for an examination.   Witness thought appellee was hurt to a certain extent.

Dr. Rowe testified, for the appellant, that he examined the appellee in June or July of 1921 after his alleged injury.   Appellee was complaining of his back.   Witness came to the conclusion that appellee was malingering.

After appellee had closed his testimony and the appellant had introduced its testimony, the court permitted the appellee to testify that Drs. Rowe and Cook told him what was the matter with him.   The appellant objected to this testimony, on the ground that it was not rebuttal.   The court overruled the objection, and the appellee testified that Dr. Cook said that witness had a sprain or strain in the back, and that it would be some time before witness could do manual work.   He told witness that he was going to send him to the hospital for treatment; that they could take better care of him there. The appellant moved to strike out all of this testimony, and the court overruled its motion, to which appellant duly excepted.

The court submitted the issues of negligence and assumed risk to the jury, in instructions to which appellant duly objected and excepted.   The court told the jury, in effect, that, if the appellee was injured through the negligence and carelessness of the fellow-servants of the appellee, as alleged in his complaint, they should return a verdict in his favor, but, on the other hand, if the injury was not caused as alleged, or if the jury should find that the injury was one of the ordinary hazards of the work that appellee was engaged in, they should return a verdict in favor of the appellant; that the appellee assumed all ordinary dangers and hazards pertaining to

such work, and, if they found that the injuries were sustained by the appellee in the performance of his work, and were a risk incident thereto, a risk known or patent as pertaining to the work itself, then the appellee could not recover.    The court also told the jury that the effect of our statute is to make the negligent act of a fellow-servant or employee of the master the act of the master or corporation itself.    The appellant objected to the rulings of the court in giving the above instructions, and also presented prayers for instructions, including, among others, one for an instructed verdict, which the court refused, to which ruling the appellant duly excepted. The jury returned a verdict in favor of the appellee in the sum of $1,500.    Judgment was rendered in favor of the appellee in that sum, from which is this appeal.

1.    The appellant contends that the undisputed evidence shows that the appellee assumed the risk, and that the court erred in not so instructing the jury as a matter of law, and in not giving the appellant's prayer for a peremptory verdict in its favor.    We cannot concur in that view of the testimony.    To sustain its contention, appellant cites *Chicago, Rock Island & Pac. Ry. Co.* v. *Grubbs,* 97 Ark. 486.    In that case two cars of creosoted cross-ties had been placed upon the sidetrack of the railroad company at the town of Lonoke.    The ties were loaded on flat-cars, and had become disarranged while being transported.    Grubbs was a member of the section crew whose duty it was, under the direction of the foreman, to straighten out the ties upon the cars.    The foreman directed men to go upon the ties to straighten them out.    He did not direct them as to the manner in which they should get upon the ties, nor did he warn them of any danger in so doing.    The ties were loaded upon the cars to a height of twelve or fourteen feet from the ground.    Grubbs had worked with ties, which had been treated with creosote, and knew that they were made slick by reason of this treatment.    The foreman left the matter of mounting the cars to Grubbs' discretion, and did not see or know when he got upon the car until after

the injury.   Grubbs went to the end of the flat-car and climbed upon the drawhead thereof, caught hold of a protruding cross-tie with his hand, and attempted to pull himself up.   The tie slipped, and Grubbs loosened his hold and fell to the ground, receiving the injury for which he instituted an action against the railroad company.

In that case we said:   "The plaintiff knew that the effect of the treatment of creosote upon cross-ties was to make them slick and therefore liable to slip. * * * Their condition was patent to him, and the manner in which they were disarranged upon the car was also patent.   It was obvious therefore that these ties were liable to slip whenever any force or weight was applied to them.   The risk of injury which might result by reason of the ties slipping or moving was obvious, and, when plaintiff undertook the service of straightening them out, he assumed that risk."

The facts of that case clearly differentiate it from the case at bar.   Here the appellee, together with two fellow-servants, was hauling and piling stumps.   At the time of the injury they were all engaged in the act of rolling a stump and placing it upon a pile three feet high.   Appellee was at the end of the stump and his two fellow-servants at the side.   Without any signal or warning of any kind to the appellee, as they were all attempting to lift the stump, which was heavy, the two fellow-servants of appellee suddenly relaxed their hold to get a new hold, causing the entire weight of the stump to come back on the appellee, which, according to the testimony of the appellee, resulted in the injury of which he complains.   According to the testimony of one of the fellow-servants of the appellee, they did not release their hold and let the weight of the stump fall on the appellee.   There was therefore no testimony whatever in this case to justify the court in submitting the issue of assumption of risk to the jury.   The appellant therefore was not prejudiced because the court, at its instance and also at the instance of the appellee, did submit such issue to

the jury, and cannot complain because the verdict was against it on this issue. The ruling of the court was more favorable to the appellant than it was entitled to, because such issue should not have been submitted at all.

In the case of *Railway* v. *Grubbs, supra,* Grubbs knew and appreciated the danger of taking hold of the ties made slick with creosote, and, in attempting to mount the ties in the manner that caused his injury, he assumed the risk. But here the appellee did not and could not know that his fellow-servants, without any signal or warning to him, would loose their hold and let the entire weight of the stump suddenly fall upon him. If the fellow-servants of the appellee did this, which the testimony in his behalf tended to prove, then the jury might have found that they were guilty of negligence, and the negligent act of the servants, so far as the appellee is concerned, was the negligent act of the master which the appellee did not assume. *St. L. I. M. & So. Ry. Co.* v. *Burdg,* 93 Ark. 88-92, and cases there cited; *St. L. I. M. & S. Ry. Co.* v. *Birch,* 89 Ark. 424. Under the undisputed facts of the record there is no room whatever for the doctrine of assumption of risk. It was a clear-cut issue of negligence, and nothing else. The court correctly submitted this issue to the jury, and there was substantial testimony to sustain its verdict on that issue.

2. The appellant next urges that the court erred in permitting the appellee to testify, over its objection, that the injury affected his digestion and water passage. This testimony was competent and relevant to the nature of the injury and the measure of damages, if any, which appellee sustained because of such injury.

3. The court permitted the appellee to testify that Dr. Cook told him of what his injury consisted. The testimony of Dr. Cook himself shows that he was in the employ of the company, and had treated appellee for the injury, and, having become convinced that he was malingering, had sent him "on up the line" to the hospital. The court did not err in permitting the appellee to testify as above, and that Dr. Cook told him he was going to

send him to the hospital to be treated. The record shows that appellee was asked the following question: ''When Dr. Rowe examined you, did he tell you what was the matter with you?'' Upon appellant's objection to the question, the court remarked: ''Well, it is shown that the doctor was the company physician.'' Appellant objected to this remark of the court. The attorney for the appellee thereupon withdrew the question, and it was not answered. It does not therefore appear that the appellee was permitted to state that Dr. Rowe had told him what was the matter with him. There was no error prejudicial to the appellant in this ruling of the court.

4. The court did not err in permitting the expert testimony on behalf of the appellee to the effect that, after an examination, from the nature of the injuries the appellee could not have been a malingerer. The court permitted experts on behalf of the appellant to testify, after detailing the results of their examinations, that, in their opinion, the appellee was a malingerer. We find no error prejudicial to the appellant in the rulings of the court in admitting or excluding testimony. Giving the testimony its strongest probative force in favor of the appellee, which we must do, the appellant is concluded by the verdict of the jury on the issue of negligence, since there was substantial testimony to sustain its verdict. See *St. L. I. M. & S. Ry. Co.* v. *Ogden,* 76 Ark. 319; *Thomas* v. *Baxter,* 76 Ark. 326, and cases cited on this point in the brief of counsel for appellee.

There is no error in the record. Let the judgment be affirmed.