GUARDIAN LIFE INSURANCE COMPANY *v.* JOHNSON.

4-2837

Opinion delivered February 27, 1933.

1020

*James D. Head*, for appellant.

*Pratt P. Bacon* and *Shaver, Shaver & Williams*, for appellee.

HUMPHREYS, J. Appellee brought suit against appellant in the circuit court of Miller County to recover $1,000 penalty and attorney's fee for total disability benefits on two policies issued to him by appellant. It was alleged in the complaint that appellee suffered total disability on March 5, 1932, within the meaning of the disability clauses in said policies. The total disability clauses were defined in the policies to be "disability caused by * * * disease which wholly prevents the insured from engaging in any business or occupation or performing any work for compensation, gain, or profit."

A petition in proper form was filed by appellant to remove the cause to the Federal court on account of diversity of citizenship and the amount involved, which was

overruled by the trial court over appellant's objection and exception.

A demurrer was also filed by appellant to the complaint on the ground that each policy provided for the payment of $50 a month on account of total disability, and that each month's alleged default in payment constituted a separate and distinct cause of action which could not be joined in order to confer original jurisdiction upon the circuit court. The demurrer was overruled over the objection and exception of appellant.

Appellant also filed an answer denying that appellee had been totally disabled by disease within the meaning of the disability clauses in the policies.

The cause was submitted upon the pleadings, testimony and instructions of the court, resulting in a verdict against appellant for $1,000, and a consequent judgment for said amount, 12 per cent. statutory penalty, and an attorney's fee of $150, from which is this appeal.

Appellant contends for a reversal of the judgment because the court denied its petition to remove the cause to the Federal court. It is argued that, in addition to the amount of $1,000 sued for, there was also involved the contingent loss to appellant of premiums amounting to $360 per annum for an indefinite length of time, as well as the validity of the policies, so that the future effect of the recovery sought would carry the amount in dispute beyond $3,000. It was ruled in the case of *Elgin* v. *Marshall*, 106 U. S. 578, 1 S. Ct. 484, that the collateral effect of a judgment is not the test of jurisdiction, but that the amount involved in the suit is the test. The same jurisdictional test was applied in the cases of the *New England Mortgage Security Company* v. *Gay*, 145 U. S. 123, 12 S. Ct. 815, and the *Mutual Life Insurance Company* v. *Wright*, 276 U. S. 602, 48 S. Ct. 323. In the Gay case, *supra*, the court said: "When the jurisdiction of this court depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judg-

ment, however certain it may be that such loss will occur."

The same jurisdictional test was applied by this court in the recent case of *Standard Life Insurance Company* v. *Robbs*, 177 Ark. 275, 6 S. W. (2d) 520. It is true that in both the Wright and Robbs cases, *supra*, recovery was sought under the death clause, instead of the total disability clause as in the instant case, but that does not change the principle that should be applied. In fact, under the death clause involved in those cases, the ultimate amount of recovery was certain; whereas, in the instant case, the ultimate amount that may be recovered is uncertain, being contingent upon a continuation of total disability. The trial court correctly ruled that the amount involved in the instant case did not exceed $3,000.

Appellant also contends for a reversal of the judgment because the court overruled the demurrer to the complaint. It is argued that appellee improperly joined separate and distinct causes of action on each installment or monthly payment in an attempt to increase the amount sufficiently to give the circuit court original jurisdiction of the cause of action. This is not an action to recover installments of $50 each as they became due, but was for past-due installments under two written instruments, and constituted a single cause of action. This court said in the case of *Ft. Smith Paper Company* v. *Templeton*, 113 Ark. 490, 168 S. W. 1092, that: "All of the separate installments due under the contract constitute a single cause of action, for the contract is not separable, as where the obligations are represented by different instruments of writing. It is true that an action may be maintained upon each installment as it becomes due, the same as upon different items of an account in the course of accrual; but, when the enforcement of the right of action is postponed until succeeding installments become due, a suit upon them all constitutes a single cause of action." The court did not err in overruling appellant's demurrer to appellee's complaint,

The facts in this case are, in substance, as follows: On the 20th day of July, appellee, a hotel clerk and cotton buyer, took out two life insurance policies for $5,000 each, making representations in the application therefor that he was in good health. Each policy contained a disability clause in the language set out above. The policy provided that, in case of total disability caused by disease, appellant would pay appellee $100 a month during the period of such disability. The premiums on the policies were either paid in cash or else the time for payment was extended beyond the month of August, 1930. Proof was filed with appellant on March 5, 1931, to the effect that appellee was unable to do any work which required him to stand on his feet for any length of time. The testimony is in slight conflict as to whether appellee was in good health at the time the policies were delivered. There is a dispute in the testimony as to whether appellee was totally disabled after the month of August, 1930, within the meaning of the total disability clauses in the policies The testimony introduced by appellee tended to show that, on and after that date, he was unable to do any work which required him to be upon his feet for any length of time, caused by a chronic case of sacroiliac joint inflammation and arthritis, and that the only remedy for the trouble or disease was to keep off his feet and to keep his body in a rigid position. In addition, it appeared from the evidence that, on account of the disease, appellee was compelled to wear day and night a specially constructed steel belt and use a specially built mattress to sleep on.

In the course of the trial, appellant offered testimony tending to show that the disability clauses related to general disability insurance, and not to disability preventing one from carrying on a particular occupation, which testimony was excluded over the objection and exception of appellant. The admission of certain other testimony of experts was objected and excepted to by appellant.

Appellant contends for a reversal of the judgment on the ground that the testimony tends to show only that appellee was unable to perform the business of a cotton buyer or hotel clerk; whereas, under the terms of the disability clauses in the policies, appellee must show by testimony that his disability prevented him from carrying on any kind of work for compensation, gain, or profit. In the first place, we think a fair interpretation of the testimony tends to show that appellee's ailment prevented him from engaging in any kind of work in the due exercise of common care and prudence. The remedy for this ailment was to keep off his feet, hold his body in a rigid position, and lie down and rest. Just how one could do this and engage in any kind of labor or business for profit is hard to imagine. In the next place, we do do not think the disability clauses, as defined in the policies, mean that one must become helpless before he can claim the benefit from or under them. In the case of *Ætna Life Insurance Company* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310, this court said, in construing a disability clause not materially different from the definition of the clauses in these policies: "Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform the substantial and material acts of his business or the execution of them in the usual and customary way." The clause the court construed in the case referred to is as follows: "That if the insured becomes totally and permanently disabled and is thereby prevented from performing any work, or conducting any business for compensation or profit." In the very recent case of *Missouri State Life Insurance Company* v. *Johnson, ante* p. 519, this court reiterated the interpretation given such disability clauses in the case referred to, as

well as other cases, in the following language: "That total disability, as used in contracts of this character, exists when the injury of the insured prevents him from doing all the substantial and material acts necessary to be done in the prosecution of his business, and that common care and prudence would require him, in his condition, not to do." The trial court correctly instructed the jury as to the meaning of the total disability clauses in the policies.

Appellant also contends for a reversal of the judgment because the trial court refused to give its requested instructions Nos. 7, 8 and 11. These instructions were fully covered by instruction No. 1, requested by appellee and given by the court.

Appellant also contends for a reversal of the judgment because the trial court refused to give its requested instructions Nos. 14, 15 and 20. These instructions presented issues not involved because the undisputed evidence shows that the premiums had been paid in cash or the time for payment of them had been extended beyond the time appellee had become disabled. In other words, that the policies were in full force when disability occurred and proof was filed. Appellee was released from any obligation to pay premiums after becoming totally disabled. *Ætna Life Insurance Company* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.

Appellant also contends for a reversal of the judgment because the trial court excluded its offered testimony tending to show that the disability clauses related to disabilities for all kinds of labor or business and not to disabilities preventing the pursuit of occupations. This testimony was not admissible because the clauses in question have received judicial interpretation by this court. Under that interpretation, there is no ambiguity as to their meaning.

Appellant also contends for a reversal of the judgment on account of the admission of the testimony of Dr. Dale relative to appellee's case being chronic. He testified that he examined appellee on the 7th day of January,

1932, for the purpose of treating him, at which time he obtained a history of his case, and that, based upon the examination and history of the case, he regarded his ailment as chronic. The doctor qualified as an expert, and his opinion was admissible as expert testimony. *Great Western Land Co.* v. *Barker,* 164 Ark. 587, 262 S. W. 650.

Appellant also contends for a reversal of the judgment because its expert witness, Dr. Caldwell, was not permitted to testify that many persons not knowing that they were afflicted with appellee's ailment, when enlightened by a physician, continued their manual labor, and that in his opinion, if compensation were in sight, some persons afflicted as appellee would exaggerate the extent of their pain and suffering. We do not think what others might or might not do, afflicted as appellee, had any relevancy to the issue of whether appellee was totally disabled, so the testimony of the doctor on this point was properly excluded.

Appellant also contends for a reversal of the judgment on the ground that the policies were not delivered during the good health of appellee. No fraud was shown on the part of appellee in procuring the policies, so his statement that he was in good health in his applications for the policies was a representation only, and, if made in good faith, will not avoid the policies. *Modern Woodmen of America* v. *Whitaker,* 173 Ark. 921, 293 S. W. 1045; *American National Insurance Co.* v. *Chavey,* 185 Ark. 865, 50 S. W. (2d) 245. These policies themselves provide that, in the absence of fraud, all statements of the insured shall be deemed representations and not warranties. Under the provisions of the policies and the authority of the cases last cited, the court properly submitted this question to the jury, and the adverse finding of the jury on the disputed question of fact is binding upon appellant. Appellant argues that instructions 3 and 4 bearing upon this issue, given at its request, are in direct conflict with instruction 4 given at appellee's request. We think not. Appellant's requested instructions 3 and 4 were more favorable than it was entitled to under

the facts, and were based on the theory that the statements were warranties, and should not have been given. Appellee's instruction No. 4 was based upon the theory that the statements were representations, and was a correct instruction, and announced the true rule of law applicable to the facts in this case.

No error appearing, the judgment is affirmed.